**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arnaldo CABRERA, Defendant–
Appellant.**

No. 14–5572.

United States Court of Appeals,
Sixth Circuit.

Argued: Dec. 4, 2015.

Decided and Filed: Jan. 22, 2016.

---

**ARGUED:** Steven P. Tramontin, Pear Sperling Eggan & Daniels, P.C., Ann Arbor, Michigan, for Appellant. Michael D. Porter, United States Attorney's Office, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Steven P. Tramontin, Joseph M. West, Pear Sperling Eggan & Daniels, P.C., Ann Arbor, Michigan, for Appellant. Michael D. Porter, United States Attorney's Office, Chattanooga, Tennessee, for Appellee.

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

## OPINION

KAREN NELSON MOORE, Circuit Judge.

A grand jury indicted Arnaldo Cabrera for being a felon in possession of a firearm after he procured a handgun for a confidential informant ("CI"). Cabrera claimed that law-enforcement agents had doctored an audio-tape recording of that transaction. He advanced that theory in pretrial motions and in post-trial submissions to the district judge. Cabrera did not, however, testify in support of that theory. A jury found him guilty. At sentencing, the district judge announced that he was sentencing Cabrera to sixty-three months' imprisonment—the top of his guidelines range—for two reasons: first, because Cabrera advanced a "fantastic" claim (that the tape was altered); second, because Cabrera did not testify in support of that claim. Cabrera's counsel raised no objection to his sentence.

Cabrera appeals, arguing that both of these factors were impermissible, and that his sentence is thus procedurally unreasonable. For the reasons set forth below, we **VACATE** Cabrera's sentence and **REMAND** his case for resentencing consistent with this opinion.

## I. FACTS AND PROCEDURE

### A. Facts

On May 8, 2013, a CI bought a firearm from Cabrera in a controlled buy. R. 63 (Trial Tr. (Cavanaugh) at 39) (Page ID # 385). Earlier that day, the CI—who at the time was facing charges for selling cocaine—met Warren County, Tennessee Sheriff's Department Investigator Jody Cavanaugh "at a secure location." *Id.* at 40 (Page ID # 386). The two had worked together before. *Id.* at 39 (Page ID # 385). Cavanaugh searched the CI to make sure he had no firearms or drugs on his person. *Id.* at 40 (Page ID # 385). Then Cavanaugh put a wire on him. *Id.* at 40–41 (Page ID # 386–87). The CI called Cabrera to arrange a meeting to purchase a firearm. *Id.* at 41 (Page ID # 387). They agreed to meet at the parking lot of an auto-part manufacturing company. *Id.* The CI drove there in his car; Cavanaugh followed. *Id.*

At the parking lot, the CI and Cabrera spoke about meeting a third, unnamed individual who had a firearm for sale. *Id.* at 41–42 (Page ID # 387–88). Cabrera got into the CI's car and the two drove to a different parking lot, where two men were waiting. *Id.* (Trial Tr. (CI) at 91–92) (Page ID # 437–38). Cabrera exited the CI's car and gave $300 to one of the men, who gave Cabrera a firearm in exchange. *Id.* Cabrera stuck the firearm in his waistband and re-entered the CI's car. *Id.* at 93 (Page ID # 439). The CI drove to a different factory where Cabrera—while still in the car—fired six or seven rounds out the window. *Id.* at 97–98, 120 (Page ID # 443–44, 466).

The CI drove Cabrera back to his car, and then drove to meet Cavanaugh. *Id.* (Trial Tr. (Cavanaugh) at 44) (Page ID # 390). The CI gave Cavanaugh the firearm Cabrera had procured for him: a Kel-Tec nine-millimeter semi-automatic handgun. *Id.* Its clip was empty. *Id.* at 46 (Page ID # 392). Cavanaugh and other law-enforcement officers then drove to where Cabrera had shot the firearm out of the CI's car window and found six nine-millimeter shells. *Id.*

## B. Procedural History

### 1. Indictment and Trial

On July 23, 2013, a grand jury indicted Cabrera for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). R. 1 (Indictment) (Page ID # 1). Because Cabrera was indigent, a magistrate judge appointed counsel to represent him. R. 2 (7/26/13 Order) (Page ID # 3).

On September 10, 2013, Cabrera filed two pretrial motions related to the audiotape recording of his transaction with the CI. First, Cabrera moved to suppress the tape. R. 11 (Mot. to Suppress at 1) (Page ID # 17). In a two-page affidavit attached to that motion, Cabrera's then attorney Aubrey Harper averred that the tape was unintelligible, that Cabrera believed it had been altered, and that there was information suggesting that Cabrera was actively assisting law enforcement. R. 11–1 (Aff. In Support of Mot. to Suppress and Mot. Requesting Expert Analysis of an Audio Tape ("Harper Aff.") at 1–2) (Page ID # 19–20). The district judge construed this motion as a motion in limine, and reserved a ruling for trial. R. 61 (Final Pretrial Conference Tr. at 8–9) (Page ID # 297–98).

Second, Cabrera filed a motion requesting an "expert, to analyze whether the tape in question ha[d] been altered, edited, or otherwise ... tampered with." R. 12 (Mot. Requesting Expert Analysis of Audio Tape at 1) (Page ID # 22). Harper attached the same affidavit to that motion. R. 12–1 (Harper Aff.) (Page ID # 24). On September 24, 2013, the magistrate judge issued an order denying this motion. R. 15 (9/24/13 Order at 4–5) (Page ID # 38–39). The magistrate judge construed the motion as one brought under 18 U.S.C. § 3006A(e) of the Criminal Justice Act. *Id.* at 2 (Page ID # 36). Cabrera's motion, however, failed to satisfy § 3006A(e): it did not address why an expert was necessary, and did not specify what work (nor at what cost) Cabrera hoped an expert would perform. *Id.* at 3–4 (Page ID # 37–38).

Cabrera's two-day jury trial began on October 10, 2013. R. 63 (Trial Tr. at 1) (Page ID # 347). The government called two witnesses: Cavanaugh and the CI. *Id.* at 2 (Page ID # 348). Without objection from Cabrera's counsel, the government introduced a CD with the audio recording of Cabrera's transaction with the CI. *Id.* (Trial Tr. (Cavanaugh) at 52–53) (Page ID # 398–99).

Cabrera did not testify. He put on two witnesses of his own: Marty McGuinness, an agent with the Tennessee Bureau of Investigation, and Danny Haimelin, Cabrera's probation officer. *Id.* (Trial Tr. (McGuinness) at 134) (Page ID # 480); *id.* (Trial Tr. (Haimelin) at 144) (Page ID # 490). Through both witnesses, Cabrera's counsel attempted to demonstrate that Cabrera had been working as a confidential informant when he procured the firearm for the CI. *Id.* (Trial Tr. (McGuinness) at 134–37) (Page ID # 480–83); *id.* (Trial Tr. (Haimelin) at 144–46) (Page ID # 490–92). The district judge evidently felt that that defense strained credulity: just before Cabrera's counsel called Haimelin to the stand, the judge excused the jury and expressed his doubts about the defense's theory, but ultimately let Haimelin testify. *Id.* (Trial Tr. at 139–44) (Page ID # 485–90).

On October 11, 2013, Cabrera's jury found him guilty. R. 26 (Verdict Form) (Page ID# 58).

### 2. Post–Trial Motions and Sentencing

On November 15, 2013, Cabrera filed a hand-written motion alleging that his trial counsel had been ineffective and requesting new counsel. R. 28 (Request for Reappointment of Att./Counsel) (Page ID # 60). On November 26, 2013, the magistrate judge held a hearing on Cabrera's motion, at which Cabrera alleged that his attorney had promised him that he would prevail at trial. R. 67 (11/26/13 Hr'g Tr. at 10) (Page ID # 674). Cabrera's counsel denied ever saying this. *Id.* at 12 (Page ID # 676). The magistrate judge told Cabrera that

she believed he had perjured himself, but still appointed new counsel because Cabrera's relationship with his attorney had deteriorated so severely. *Id.* at 16 (Page ID # 680).

On March 16, 2014—just before his sentencing hearing—Cabrera wrote two letters to the district judge. In the first, he again requested new counsel. R. 43 (First Letter from Arnaldo Cabrera to Judge Harry S. Mattice, dated 3/16/14) (Page ID # 199). He wrote that his replacement counsel had been "very disrespectful and ha[d] even called [him] stupid." *Id.* at 1 (Page ID # 199). In the second letter, Cabrera alleged that there was "something really wrong about the tape," that he had been "accused of a crime that [he] was forced to do at gunpoint," and that the CI, Cavanaugh, and the Assistant United States Attorney who prosecuted him were all corrupt. R. 43 (Second Letter from Arnaldo Cabrera to Judge Harry S. Mattice, dated 3/16/14) (Page ID # 201–02). On March 25, 2014, the magistrate judge held a hearing and denied Cabrera's request for new counsel as moot after Cabrera agreed to work with his replacement counsel. R. 65 (3/25/14 Hr'g Tr. at 18–19) (Page ID # 643–44).

Cabrera was sentenced on May 2, 2014. R. 57 (Sentencing Hr'g Tr.) (Page ID # 265). With a criminal history category of IV and a total offense level of twenty, Cabrera faced a guidelines range of fifty-one to sixty-three months' imprisonment.[1] *Id.* at 5, 9 (Page ID # 269, 273). Cabrera's attorney requested a sentence at the bottom of that range; the government, the top. *Id.* at 10 (Page ID # 274). Cabrera

---

1. Cabrera's probation officer had initially added a four-point enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm while trafficking methamphetamine. R. 50 (Revised PSR ¶ 17) (Page ID # 217). However, at Cabrera's sentencing hearing, the government agreed with Cabrera's counsel that the enhancement did not apply, and the district judge reduced Cabrera's total offense level from twenty-four to twenty. R. 57 (Sentencing Hr'g Tr. at 4–5) (Page ID # 268–69).

maintained his innocence at the hearing. *Id.* at 12 (Page ID # 276).

The district judge sentenced Cabrera to sixty-three months in prison, the top of the guidelines range. *Id.* at 12 (Page ID # 276). He explained his reasons for selecting that sentence as follows:

> I'll impose sentence now. Mr. Cabrera, I am, as the government recommends, going to sentence you at the top of your guideline range. The reason I'm going to do that, Mr. Cabrera, is because throughout these proceedings, I have to tell you, you know, your behavior to me at least has evinced a pretty complete disrespect for the law and for these proceedings generally.
>
> I'll give you some examples. While everybody has the constitutional right to go to trial, you have at least as far as I'm aware through your attorney and through letters to me persisted in what I, what I view as some fantastic story regarding the altering of these tapes, but only your prior attorney has come forward to even make the slimmest showing. You never put yourself on the record either at the trial or in support of your request for an expert to have these tapes viewed. I have to tell you, from my standpoint, and given your experience with the criminal justice system, I view that as an incredibly cynical attempt to game the whole system here. I don't believe any of that. I don't believe any of that. I think that's a fantastical story that you have conjured up, and I believe that by doing things like that, as well as all of these machinations that you've gone through, just evince a total disrespect for the law. And I believe that a sentence at the high end of your range is necessary for that reason.
>
> I'll impose sentence now. The Court has considered the nature and circum-

stances of the offense, the history and characteristics of the defendant, and the advisory guideline range, as well as other factors listed in Title 18, United States Code, Section 3553(a).

> Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court on Count 1 that the defendant, Arnaldo Cabrera, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 63 months.

*Id.* at 12–14 (Page ID # 276–78). Cabrera's counsel did not object to Cabrera's sentence. *Id.* at 15 (Page ID # 279). The district judge also revoked Cabrera's supervised release and sentenced him to a fourteen-month prison term consecutive to his sixty-three months on the underlying felon-in-possession charge. *Id.* at 17 (Page ID # 281). Cabrera timely appealed. R. 53 (Notice of Appeal) (Page ID# 234).

## II. ANALYSIS

Cabrera argues that the district judge considered two impermissible factors when he sentenced Cabrera, each of which implicates a distinct constitutional right. First, Cabrera argues that the district judge punished him for not testifying—either at trial or in connection with his request for an expert—in support of his theory that the government doctored the audio-tape of his controlled buy. Cabrera claims that, by relying on this factor, the district judge violated his Fifth Amendment right against self-incrimination. Second, Cabrera argues that the district judge punished him for "challenging the government's case" by arguing that the government altered the tape. Cabrera Br. at 15. By relying on this factor, Cabrera contends, the district judge infringed his Sixth Amendment right "to subject the prosecu-

tion's case to the crucible of meaningful adversarial testing." *Id.*

■ "When the sentencing court considers an impermissible factor in calculating a defendant's sentence, a reviewing court will vacate and remand for resentencing." *United States v. Recla,* 560 F.3d 539, 545 (6th Cir.2009). We have not adopted a comprehensive definition of what constitutes an "impermissible factor." In general, we have found reversible error where a district judge relies on a factor that is neither enumerated in nor consistent with the Sentencing Guidelines or 18 U.S.C. § 3553(a). *See, e.g., id.* at 546–47 (vacating sentence because district judge considered likely effect of prosecution's Rule 35(b) motion in calculating defendant's sentence).

■ Because Cabrera's counsel did not object to his sentence at his sentencing hearing, we review Cabrera's instant challenge for plain error. *United States v. Davis,* 751 F.3d 769, 773 (6th Cir.2014) (citing *United States v. Vonner,* 516 F.3d 382, 386 (6th Cir.2008) (en banc)). This is a four-part test: to prevail, Cabrera must "show (1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.' " *Vonner,* 516 F.3d at 386 (quoting *United States v. Gardiner,* 463 F.3d 445, 459 (6th Cir. 2006)).

We hold that the district judge plainly erred when he sentenced Cabrera. The district judge sentenced Cabrera to the top of his guidelines range in part because he "never put [him]self on the record." In doing so, the district judge effectively punished Cabrera for exercising his Fifth Amendment right against self-incrimination. That is an impermissible sentencing factor. By relying on this factor here, the district judge committed plain error. Ca-

brera's Sixth Amendment claim presents a closer question. However, we conclude that the district judge erred when he sentenced Cabrera for raising a "fantastic" claim (that the tapes were doctored), because this was also an impermissible sentencing factor.

## A. Procedural or Substantive Reasonableness

■ Before considering the merits of Cabrera's two claims, we must determine whether he is challenging the procedural or substantive reasonableness of his sentence. "Whether consideration of an impermissible factor is categorized under the procedural or substantive reasonableness prong is not fully settled within our Circuit." *United States v. Espericueta–Perez,* 528 Fed.Appx. 572, 578 n. 5 (6th Cir.2013); *accord United States v. Musgrave,* 761 F.3d 602, 607 n. 1 (6th Cir.2014). Here, the distinction is more than semantic. If we interpret Cabrera's challenges to his within-guidelines sentence as substantive challenges, we may apply a presumption of reasonableness to his sentence; if the challenges are procedural, we may not apply a presumption of reasonableness. *United States v. Liou,* 491 F.3d 334, 337 n. 2, 339 (6th Cir.2007).

The parties' briefs do not fully resolve the conflict. Cabrera argues that the district judge committed procedural error. The government responds by arguing that his sentence was procedurally and substantively reasonable.

We addressed this tension in *United States v. Malone,* 503 F.3d 481 (6th Cir. 2007). In *Malone,* we reasoned that a claim that a district judge relied on an impermissible factor goes "more to the *process* by which the district court arrived at the given sentence than to the substantive aspect of the sentence (i.e., the rela-

tionship between the length of the sentence and the strength of the reasoning under § 3553(a))."[2] *Id.* at 484. "However, whether it is categorized as being procedural, substantive, or a combination of the two," we added, "it is clear that a sentence based on an improper factor fails to achieve the purposes of § 3553(a) and may be unreasonable regardless of length." *Id.* (citation and internal quotation marks omitted).

■ We agree with *Malone* that consideration of an impermissible factor is more properly considered a procedural, not substantive, error. Interpreting Cabrera's challenges as procedural is also consistent with *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), and 18 U.S.C. § 3553(a). *Gall* explained that a district judge commits procedural error by, *inter alia,* "failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence." *Id.* at 51, 128 S.Ct. 586. When a district judge bases a sentence on an impermissible factor, he commits both errors: he sentences a defendant based on considerations not listed in § 3553(a), and explains that sentence with reference to those unlisted considerations. *See United States v. Smart,* 518 F.3d 800, 803–04 (10th Cir.2008) (interpreting district judge's reliance on factor not listed in § 3553(a) as a procedural error).

Accordingly, we consider Cabrera's two arguments as challenges to his sentence's procedural reasonableness. The presumption of reasonableness for within-guidelines sentences in the context of substantive-reasonableness challenges is therefore inapplicable. *See Vonner,* 516 F.3d at 389–90; *Liou,* 491 F.3d at 339 n. 2.

**2.** We reached the same conclusion in an unpublished opinion that relied on *Malone:*

## B.   Fifth Amendment Challenge

We begin with Cabrera's Fifth Amendment claim. At Cabrera's sentencing, the district judge cited the fact that Cabrera "never put [him]self on the record either at the trial or in support of [his] request for an expert to have the[ ] tapes viewed." R. 57 (Sentencing Hr'g Tr. at 13) (Page ID # 277). The most Cabrera had done, the judge stated, was have his counsel "come forward to . . . make the slimmest showing" in support of his claim that the tapes were doctored. *Id.* That "incredibly cynical attempt to game the whole system," the judge concluded, demonstrated "a total disrespect for the law." *Id.*

This was plain error. The transcript of Cabrera's sentencing and the record in this case are clear: the district judge relied on the fact that Cabrera did not testify at trial in calculating his sentence. That is an impermissible sentencing factor. Cabrera satisfies all four plain-error steps: he has demonstrated that the district judge (1) made an error, (2) plain at the time of sentencing, (3) which violated Cabrera's substantial rights, and (4) undermined the integrity of Cabrera's sentencing proceedings. *Vonner,* 516 F.3d at 386. Finding a plain constitutional violation, we must vacate Cabrera's sentence and remand his case for resentencing.

### 1.   The district judge erred by relying on Cabrera's decision not to testify as a sentencing factor.

■ "[A] defendant's Fifth Amendment right against self-incrimination 'is fulfilled only when a criminal defendant is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.'" *Ketchings v. Jackson,* 365 F.3d 509, 512 (6th Cir.2004)

*United States v. Romanini,* 502 Fed.Appx. 503, 507 (6th Cir.2012).

(quoting *Estelle v. Smith*, 451 U.S. 454, 468, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)). Sentencing a defendant for exercising that right vitiates it.

Cabrera's sentencing transcript is not a model of clarity, but it is clear that the district judge sentenced Cabrera to the top of his guidelines range in part because he never testified. The judge told Cabrera:

> You never put yourself on the record either at the trial or in support of your request for an expert to have these tapes viewed. I have to tell you, from my standpoint, and given your experience with the criminal justice system, I view that as an incredibly cynical attempt to game the whole system here.

R. 57 (Sentencing Hr'g Tr. at 13) (Page ID # 277). That statement admits of only one reasonable interpretation: Cabrera's sentencing judge punished him for not testifying in support of his audio-tape tampering claim. That is an impermissible sentencing factor, and the district judge erred when he relied on it at Cabrera's sentencing.

The government argues that this reading is strained. It claims that the judge's "put yourself on the record" comment, "viewed in context, refers to Defendant's failure to present any proof whatsoever to support his allegations of evidence-tampering, not specifically to the decision not to testify at trial." Gov't Br. at 15. That explanation fails in two respects. First, it disregards the words actually spoken. The district judge *did* reference Cabrera's failure to present proof, which *explicitly encompassed* his failure to "put [him]self on the record." Cabrera's sentencing judge was bothered not only by Cabrera's failure to prove his tampering claim, but also by his unwillingness to testify in support of it.

Second, considering the district judge's statements in context actually reinforces Cabrera's reading. The district judge stated that "only [Cabrera's] prior attorney ha[d] come forward to even make the slimmest showing" in support of the tampering claim. R. 57 (Sentencing Hr'g Tr. at 13) (Page ID # 277). The district judge was presumably referring to the affidavit that Cabrera's attorney, Harper, appended to Cabrera's motion requesting an expert and his motion in limine. R. 11–1 (Harper Aff.) (Page ID # 19); R. 12–1 (Harper Aff.) (Page ID # 24). The district judge immediately followed that comment with his "put yourself on the record" statement. The most natural reading of the sentencing transcript is that the district judge drew a parallel between Cabrera's former attorney (who "put himself on the record" by submitting an affidavit) and Cabrera (who did not). That parallel did not simply highlight Cabrera's failure to adduce evidence in support of his tampering claim, but more importantly emphasized Cabrera's refusal to *testify* in support of it.

This reading also aligns with the district judge's comment that Cabrera made "an incredibly cynical attempt to game the whole system." R. 57 (Sentencing Hr'g Tr. at 13) (Page ID # 277). We do not read that statement as an assertion that Cabrera's defense was cynical because it was baseless. Rather, it seems that the district judge considered Cabrera's strategy of having his attorney put *himself* on the record—while Cabrera remained silent—cynical.

One issue complicates this otherwise straightforward constitutional violation. The district judge evidently believed that Cabrera's refusal to testify "evinced a pretty complete disrespect for the law." R. 57 (Sentencing Hr'g Tr. at 13) (Page ID # 277). It is true that 18 U.S.C. § 3553(a)(2)(A) identifies "promot[ing] respect for the law" as a factor that district judges "shall consider" when calculating a

defendant's sentence. Thus, the government argues, Cabrera's sentencing judge seemed to consider a permissible factor when he sentenced Cabrera. Gov't Br. at 17.

■ We disagree. The fact that the district judge cloaked an impermissible sentencing factor (Cabrera's refusal to testify) in a permissible one (§ 3553(a)(2)(A)) does not change the fact that he punished Cabrera for exercising his Fifth Amendment right against self-incrimination. Moreover, Cabrera did not "disrespect" the law by not testifying in support of his doctored-tape theory. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The district judge sentenced Cabrera in part because he exercised that privilege against self-incrimination. That is an impermissible sentencing factor.

■ The government might have a stronger counterargument if the sentencing judge's "put yourself on the record" comment was simply a stray statement among other permissible justifications for Cabrera's sentence. It was not. Although Cabrera does not raise this precise argument in his brief, we think it is clear that the district judge failed adequately to explain Cabrera's sentence. "Although '[t]here is no requirement that the district court ... engage in a ritualistic incantation of' the § 3553(a) factors it considers, ... the district court's sentence should nonetheless reflect the considerations listed in § 3553(a)." *United States v. Chandler,* 419 F.3d 484, 488 (6th Cir.2005) (quoting *United States v. Washington,* 147 F.3d 490, 491–92 (6th Cir.1998)). That did not happen here. Indeed, the district judge cited § 3553(a)—in cursory fashion—just once, and only *after* he sentenced Cabrera to sixty-three months in prison. R. 57

(Sentencing Hr'g Tr. at 13) (Page ID # 277). Moreover, the district judge identified (tacitly) just one enumerated § 3553(a) factor: promoting respect for the law under § 3553(a)(2)(A). The only sentencing factors the judge discussed at length were: (1) the fact that Cabrera advanced a "fantastic" claim and (2) Cabrera's failure to testify in support of that claim. Cabrera's sentencing transcript thus gives little reason to believe that the district judge considered § 3553(a) in any meaningful way when he sentenced Cabrera. That makes the violation of Cabrera's Fifth Amendment right against self-incrimination all the more clear.

In sum, Cabrera received a sixty-three-month prison sentence in part because he exercised his Fifth Amendment right against self-incrimination. That was error.

**2. The district judge's error was plain.**

■ Having concluded that the district judge erred when he sentenced Cabrera for not testifying in support of his tampering claim, we must determine whether that error was plain. "A 'plain error' is one that is clear or obvious." *United States v. Oliver,* 397 F.3d 369, 379 (6th Cir.2005). Thus, "an error is plain" only if it "is clear under current law." *United States v. Dedman,* 527 F.3d 577, 591 (6th Cir.2008) (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In other words, a plain error is one that is not "subject to reasonable dispute." *Puckett v. United States,* 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009).

The district judge's error was plain. We are unaware of any cases in which we have upheld a sentence where a district judge sentenced a defendant for not testifying at *trial. Cf. Fabiano v. Wheeler,* 583 F.2d 265, 269 (6th Cir.1978) (rejecting ha-

beas petitioner's argument that sentencing judge "penalized" her for maintaining silence before trial). The Supreme Court addressed a related issue in *Mitchell v. United States,* 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), where it found reversible error when a sentencing judge drew an adverse inference from a defendant's silence at *sentencing. Id.* at 330, 119 S.Ct. 1307. *Mitchell*'s holding, as we have recognized, is narrow. "The *Mitchell* majority ... explicitly limited its holding regarding inferences drawn from a defendant's silence to facts about the substantive offense and did not address other inferences that may be drawn from a defendant's silence...." *United States v. Kennedy,* 499 F.3d 547, 552 (6th Cir.2007). Even under this reading, *Mitchell* makes plain that when a district judge draws an adverse inference from a defendant's silence, he "impose[s] an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Mitchell,* 526 U.S. at 330, 119 S.Ct. 1307.

■ In finding a *plain* error here, we emphasize that "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants." *McKinley v. City of Mansfield,* 404 F.3d 418, 437 (6th Cir.2005) (quoting *United States v. Verdugo–Urquidez,* 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990)). And "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). Just so here. By relying on Cabrera's silence at trial as a sentencing factor, the district judge did not simply contravene § 3553; he burdened a fundamental constitutional right. Our conclusion that the district

judge violated a bedrock protection of the Fifth Amendment is not "subject to reasonable dispute." *Puckett,* 556 U.S. at 135, 129 S.Ct. 1423.

By purporting to sentence Cabrera at the top of his guidelines range because he "never put [him]self on the record," the district judge effectively punished Cabrera for exercising his Fifth Amendment right against self-incrimination. That error was plain: it clearly and obviously violated one of Cabrera's fundamental constitutional rights.

### 3. The district judge violated Cabrera's substantial right to be sentenced pursuant to § 3553(c).

■ Our conclusion that the district judge violated Cabrera's right against self-incrimination does not end our inquiry. Whether this error was *reversible* turns on a further question: did the district judge violate Cabrera's "substantial rights" at sentencing?

We begin by considering two definitions of "substantial rights." The first equates the violation of "substantial rights" to prejudice—to hold "that a sentencing error affects substantial rights where it causes the defendant 'to receive a more severe sentence.'" *Oliver,* 397 F.3d at 379 (quoting *United States v. Swanberg,* 370 F.3d 622, 629 (6th Cir.2004)). That approach is consistent with the Supreme Court's formulation of "substantial rights" in *Olano,* where it wrote that "in most cases ... [an] error ... must have affected the outcome of the district court proceedings" to constitute plain error. *Olano,* 507 U.S. at 734, 113 S.Ct. 1770; *accord United States v. Barnett,* 398 F.3d 516, 526 (6th Cir.2005). For Cabrera to prevail on such a claim, he would have to demonstrate that his *within-guidelines* sentence would have been shorter absent this sentencing error.

■ However, we have adopted a second interpretation of "substantial rights" focused on § 3553(c), and in the process identified a substantial right that does not require a showing of prejudice: the right to meaningful appellate review. Section 3553(c) reads, in relevant part:

> The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence ... is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range....

18 U.S.C. § 3553(c). Thus, § 3553(c) requires district judges to "adequately explain [a] chosen sentence to allow for meaningful appellate review." *Gall*, 552 U.S. at 50, 128 S.Ct. 586. Put another way: "Defendants have a right to meaningful appellate review of their sentences and § 3553(c) facilitates such a review by requiring the district court to state its specific reasons for imposing a particular sentence." *United States v. Blackie*, 548 F.3d 395, 402 (6th Cir.2008).

■ Accordingly, we have held that a district judge violates a defendant's right to meaningful appellate review by insufficiently explaining his reasons for selecting a given sentence. *See United States v. Wallace*, 597 F.3d 794, 806–07 (6th Cir. 2010); *Blackie*, 548 F.3d at 402–03; *see also Rita v. United States*, 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). Importantly, both defendants who receive within-guidelines sentences (pursuant to § 3553(c)(1)) and defendants who receive outside-guidelines sentences (under § 3553(c)(2)) enjoy the right to meaningful appellate review. *Wallace*, 597 F.3d at 806–07; *Blackie*, 548 F.3d at 401–02.

The right to meaningful appellate review necessarily encompasses another right: the right to be sentenced pursuant to § 3553(c). A district judge *must comply* with § 3553(c) in order to afford a defendant the right to meaningful appellate review—i.e., to create a record for appeal that adequately discloses the judge's reasons for sentencing a defendant. *See Blackie*, 548 F.3d at 400–01, 402 ("A sentence imposed without complying with the requirements of § 3553(c) constitutes error ... [and] 'Section 3553(c) bestows on defendants the right to argue more effectively [whether] ... a sentence is reasonable.'" (quoting *United States v. Lewis*, 424 F.3d 239, 247 (2d Cir.2005) (internal quotation marks omitted))). Without this requirement, the right to meaningful appellate review is, put simply, not meaningful. And the only reasonable construction of § 3553(c) is that a district court's "reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), must be *permissible* (and not, *inter alia*, violative of a defendant's constitutional rights). A district judge, in other words, cannot satisfy § 3553(c) by citing impermissible reasons for imposing a sentence. That is why § 3553(a) lists factors that a district judge "*shall* consider" in calculating a defendant's sentence: to provide a list of permissible sentencing factors that district judges are required to consider. *Id.* § 3553(a) (emphasis added); *see Pepper v. United States*, 562 U.S. 476, 490, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) "( [D]istrict courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for 'reasonableness.'").

The substantial right to be sentenced pursuant to § 3553(c) flows naturally from the right to meaningful appellate review and the text of § 3553. And that right is violated where, as here, a district judge bases a sentence—even a *within-guidelines* sentence—on factors that are not only not enumerated in § 3553, but that violate a defendant's basic constitutional rights. By sentencing Cabrera for exercising his Fifth Amendment right against self-incrimination, the district judge violated Cabrera's substantial right to be sentenced pursuant to § 3553(c).

**4. By punishing Cabrera for not testifying at trial, the district judge undermined the fairness, integrity, and public reputation of Cabrera's sentencing proceedings.**

■■■ This final plain-error step is straightforward: "failure to comply with § 3553(c) ... affects the fairness, integrity, or public reputation of judicial proceedings." *Wallace,* 597 F.3d at 807 (internal quotation marks omitted). Section 3553(c) affirmatively obligates district judges to justify their sentences with reference to § 3553(a)'s factors. As Justice Breyer wrote for the majority in *Rita:*

> [T]hat requirement reflects sound judicial practice. Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust.

*Rita,* 551 U.S. at 356, 127 S.Ct. 2456. Compliance with § 3553(c) thus "promote[s] the perception of fair sentencing." *Gall,* 552 U.S. at 50, 128 S.Ct. 586. Violations of § 3553(c) undermine that perception.

This logic applies with even greater force here. The district judge did not simply fail to explain Cabrera's sentence with reference to the § 3553(a) factors. He selected Cabrera's sentence because Cabrera exercised a right that the Constitution enshrines. That decision made Cabrera's sentence not only procedurally infirm, but fundamentally unfair. It undermined the integrity of Cabrera's sentencing proceedings. At bottom, it rendered Cabrera's sentence procedurally unreasonable.

**C. Sixth Amendment Challenge**

■■■ Cabrera additionally argues that the district judge punished him for arguing (albeit not testifying) that the audio-tape of his controlled buy was doctored. In doing so, Cabrera contends, the district judge violated his Sixth Amendment "right to subject the government's case to meaningful adversarial testing." Cabrera Br. at 17.

Although this is a close question, we conclude that the district judge infringed Cabrera's Sixth Amendment right. Because the district judge's plain violation of Cabrera's *Fifth* Amendment right provides us with an independent basis for reversal, we need not explore whether its violation of his *Sixth* Amendment right constituted plain error in order to vacate his sentence. Nonetheless, because we will remand Cabrera's case for resentencing consistent with this opinion, we review his Sixth Amendment challenge on the merits.

■■■ When considering a procedural reasonableness challenge, "we review the sentencing transcript to ensure ... that the sentencing judge adequately considered the relevant § 3553(a) factors and clearly stated his reasons for imposing the chosen sentence." *United States v. Thomas,* 498 F.3d 336, 340 (6th Cir.2007) (quoting *Liou,* 491 F.3d at 339). Statements made during sentencing, however, do not exist in a vacuum. Thus, "we will vacate a

sentence if the *context and the record* do not make clear the court's reasoning." *Thomas,* 498 F.3d at 340 (quoting *Liou,* 491 F.3d at 339 n. 4) (emphasis added) (internal quotation marks omitted).

Context and the record are important here. The district judge faulted Cabrera for advancing a "fantastic story regarding the altering of the[ ] tapes." R. 57 (Sentencing Hr'g Tr. at 13) (Page ID # 277). The judge also stated that Cabrera had gone through "machinations" to advance that theory, including sending letters to him. *Id.* By employing those tactics, the judge reasoned, Cabrera had "evince[d] a total disrespect for the law." *Id.* Those statements suggest that Cabrera's sentencing judge was frustrated with what he perceived as Cabrera's abuses of the *judicial process.*

That brings our analysis back to the sole § 3553 sentencing factor that the district judge mentioned specifically: § 3553(a)(2)(A). It also focuses our inquiry: does sentencing a defendant for abusing the judicial process "promote respect for the law" within the meaning of § 3553(a)(2)(A)?

We often equate § 3553(a)(2)(A) with specific deterrence: a defendant demonstrates *disrespect* for the law by repeatedly violating it. *See, e.g., United States v. Sanders,* 501 Fed.Appx. 455, 461 (6th Cir. 2012) (district judge did not give unreasonable weight to defendant's criminal history because his "extensive criminal background exhibit[ed] an obvious disrespect for the law"); *United States v. Jennings,* 407 Fed.Appx. 20, 21 (6th Cir.2011) (district judge adequately explained upward variance by, *inter alia,* citing "the need 'to promote respect for the law' because 'the sentences that ha[d] been imposed previously for [defendant's] drug activities ha[d] not deterred him from criminal conduct"); *United States v. Alexander,* 217 Fed.Appx.

417, 423 (6th Cir.2007) (district judge did not plainly err when he considered that defendant demonstrated the "ability, but not the desire ... to conform his conduct to society," and accordingly sentenced him within the guidelines "to 'promote respect for the law'" (quoting 18 U.S.C. § 3553(a)(2)(A))).

■ However, it is clear that a district judge may consider a defendant's abuse of the legal process at sentencing. Section 3C1.1 of the Sentencing Guidelines is instructive: it authorizes a two-level enhancement for defendants who "willfully obstruct[ ] or impede[ ] ... the administration of justice." U.S.S.G § 3C1.1. Cases addressing perjury also illustrate this point. When a defendant abuses his right to testify at trial by perjuring himself, his "readiness to lie under oath ... may be deemed probative of his prospects for rehabilitation." *United States v. Grayson,* 438 U.S. 41, 52, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), *superseded by statute on other grounds as recognized by Barber v. Thomas,* 560 U.S. 474, 481–82, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010). In turn, a district judge may consider a defendant's perjury when calculating his sentence. *See United States v. Dunnigan,* 507 U.S. 87, 95–96, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

Cabrera arguably abused the judicial process. He accused several government officials of corruption and dishonesty without offering any real justification. He wrote to the district judge to argue in support of this claim. A magistrate judge stated that Cabrera had committed perjury. Moreover, even in his brief on appeal, Cabrera provides little reason to suspect that the audio recording of his controlled buy was in fact doctored. In turn, it seems reasonable that the district judge, upset by these "machinations," believed that Cabrera had disrespected the prose-

cution, law-enforcement, Cabrera's court-appointed counsel, and the court itself.

The district judge, however, cited none of these issues when he sentenced Cabrera. Rather, he chided Cabrera for raising a "fantastic" (or "fantastical") claim. R. 57 (Sentencing Hr'g Tr. at 13) (Page ID # 277). He cited no other "abuses" or disrespectful acts. Moreover, the government never sought to enhance Cabrera's sentence under § 3C1.1, and we note that the commentary to that guideline provides that it "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1 cmt. 2.

What we are left with, then, are the district judge's comments that Cabrera disrespected the law by raising a "fantastic" defense. This was also an impermissible sentencing factor. By relying on this factor, the district judge violated Cabrera's Sixth Amendment right to oppose the government's case against him. After all, "the Constitution requires ... that a defendant be given the right to challenge the State's case against him using the arguments *he* sees fit." *Indiana v. Edwards*, 554 U.S. 164, 184, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). True, Cabrera had "no constitutional right to file frivolous litigation." *United States v. Miller*, 531 F.3d 340, 351 (6th Cir.2008) (quoting *Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007)). But he plainly had a right to test the government's case by raising the arguments he considered meritorious. *See Edwards*, 554 U.S. at 184, 128 S.Ct. 2379. The district judge violated that right when he sentenced Cabrera for pursuing his doctored-tape theory.

In sum, even though the district judge seemed to rely on § 3553(a)(2)(A), his statements suggest that he misinterpreted the thrust of that statutory sentencing factor. At minimum, the district judge failed to substantiate his claim that Cabrera dis-

respected the law within the meaning of that factor. As a result, Cabrera was punished for exercising his Sixth Amendment right to challenge the government's case. We thus conclude that the district judge erred when he sentenced Cabrera for raising a "fantastic" defense.

### III. CONCLUSION

For the reasons set forth above, we **VACATE** Cabrera's sentence and **RE-MAND** his case for resentencing consistent with this opinion.