NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0580n.06

No. 24-5433

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Dec 16, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| MICHAEL BENTLEY III, | ) | |
|     Defendant-Appellant. | ) ) | OPINION |
|  | ) | |

Before: CLAY, KETHLEDGE, and LARSEN, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Michael Bentley III appeals from his sentence for Conspiracy to Distribute 50 Grams or More of Methamphetamine (Actual) under 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), Attempt to Possess with Intent to Distribute 50 Grams or More of Methamphetamine (Actual) under the same statutes, and Using, Carrying, and Brandishing a Firearm During and in Relation to a Drug Trafficking Offense under 18 U.S.C. § 924(c)(1)(A)(ii). For the reasons set forth below, we **AFFIRM** Bentley's sentence.

## I. BACKGROUND

### A. Factual Background

In 2020, law enforcement was investigating a drug trafficking organization supplying methamphetamine and other drugs into the Eastern District of Tennessee. As part of that investigation, agents monitored packages sent to the Eastern District of Tennessee from a certain area in California. On February 28, 2022, agents intercepted a suspicious package from California bound for Bentley's grandparents' home. They seized the package and found that it contained

nearly a kilogram of highly pure methamphetamine. Agents replaced the drugs with fake methamphetamine and then sent the package along to its intended destination. They surveilled Bentley's grandparents' house, and when they observed Bentley there with the package, they attempted to arrest him. He fled, pulling a gun from his waistband in the process, and holding it in the direction of the law enforcement agents. Bentley insists that he did not intentionally point the gun at anyone and that at most he swept it in their general direction. The agents heard a gunshot and returned fire as they continued to observe Bentley running away with the gun pointed in their direction. Ultimately, the agents apprehended Bentley, and he admitted to trafficking methamphetamine.

**B. Procedural Background**

A Second Superseding Indictment charged Bentley with Conspiracy to Distribute 50 Grams or More of Methamphetamine under 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A), Attempt to Possess with Intent to Distribute 50 Grams or More of Methamphetamine under the same provisions, and Using, Carrying, and Brandishing a Firearm During and in Relation to a Drug Trafficking Crime under 18 U.S.C. § 924(c)(1)(A)(ii). Bentley refused to enter a plea, and the district court granted the government's motion to enter a plea of not guilty on his behalf.

Throughout the court proceedings, Bentley asserted in multiple filings and hearings that he was subject to neither the criminal laws of the United States nor the jurisdiction of its courts and that his case should be settled commercially. In at least one instance, the district court noted that a submission by Bentley was reminiscent of "the sovereign citizen movement" and "warned [Bentley] that any future filings premised on sovereign citizen lore . . . [would] be summarily denied." Order, R. 78, PageID #252–53. Bentley took issue with the district court's reference to

the sovereign citizen movement because it carried a negative connotation, but he continued to raise the same substantive ideas. A jury found Bentley guilty of all counts.

Bentley continued his jurisdictional protest through sentencing. In his sentencing memorandum, he stated that the judicial power of the United States is vested in the Supreme Court, the common law is the supreme law of the land, and the district court is an Article I court with authority to deal only with commerce and therefore lacking jurisdiction to adjudicate his case. He requested a sentence of time served.

At Bentley's sentencing hearing, the district court acknowledged the advisory guidelines custodial sentence range. For each of the drug trafficking counts, the guidelines range was 210 to 262 months with a 10-year mandatory minimum. The firearm count carried a statutory range of seven years' to life imprisonment. The total resulting advisory range was 294 to 346 months.

In his allocution, Bentley stated that the district court has "two criminal jurisdictions[:] One . . . under the common law and the other . . . [by] contract under . . . admiralty maritime jurisdiction." Sentencing Tr., R. 245, PageID #3812–13. He argued that he had committed no crime under common law because "no sworn injured party testified against" him and he had "not consented to any contract with the United States giving over the authority to adjudicate [his] rights . . . ." *Id.* at PageID #3813. Basically, according to Bentley, he was innocent of any legitimate crime, and the government lacked jurisdiction over him. He added that the offense conduct spanned only a few weeks and that a 20-year sentence for that limited participation in drug trafficking would be unjust. He asked that the court impose his sentences concurrently, noted that he wanted to return home to his daughter, and stated, "I know I made mistakes, but I'm a different man, I'm a changed man." *Id.* at PageID #3816.

In response to Bentley's jurisdictional arguments, the district court stated:

> I have tried a number of cases involving defendants who held these sovereign citizen-type views, never turned out well for any of them, defendants who come into this court and espouse various antigovernment views or claim that the court has no jurisdiction over them, claim that they're above the law and they can suffer no consequences at the hands of the court, and who more often than not end up representing themselves because lawyers will not in good faith make those arguments. . . . [Y]ou will not win in the Sixth Circuit or in the U.S. Supreme Court on a claim that this court has no jurisdiction over criminal cases. You will not win on the argument that the only jurisdiction this court has is over common law offenses and contracts. Those are senseless arguments. They've never prevailed and they will not prevail this time . . . .

*Id.* at PageID #3817, 19. Then the district court methodically and thoroughly discussed several of the 18 U.S.C. § 3553(a) sentencing factors: the seriousness of the offense, the need to promote respect for the law, the need to protect the public, the need for adequate deterrence, the nature and circumstances of Bentley's involvement in the offense, and Bentley's personal history and characteristics. *See* 18 U.S.C. § 3553(a).

Specifically, the district court reflected on the seriousness of the offense stemming from the quantity of drugs for which Bentley was responsible, the increasing prevalence of methamphetamine deaths, the threat of methamphetamine to people's lives, families, livelihoods, and physical and psychological wellbeing, and the aggravating involvement of a firearm that Bentley had held in the direction of law enforcement officers and discharged.

In addition to Bentley's holding a firearm toward uniformed police officers and running away from them, the district court focused on Bentley's "filings in this case and . . . views about government[,]" Sentencing Tr., R. 245, PageID #3830, as evidence of Bentley's lack of respect for the law. Relatedly, Bentley's views gave the district court concern about protecting the public

from him and about the prospect of deterring him from reoffending. The court also noted the significant need to deter the public from engaging in conduct like Bentley's.

In terms of involvement in the crime, Bentley would be punished for his own actions and was not subject to leadership or mitigating role adjustments.

On history and characteristics, the court discussed at length Bentley's horrific childhood, his "immatur[ity]" and "vulnerab[ility,]" *id.* at PageID #3837, and the apparent negative influence of his mother, including the district court's belief that Bentley's antigovernment views originated with her. The district court noted, however, that it did not see a causal link between Bentley's traumas and illegal conduct. It also acknowledged that Bentley has a young daughter, struggles with addiction, and had attempted to cooperate in the government's investigation.

In determining the sentence from the balance of those factors, the district court gave Bentley "the full benefit of the doubt" and varied downward from the guideline range to 200 months, concurrently, on both of the drug trafficking counts and the minimum of 84 months, to be served consecutively, on the gun count, for a total of 284 months. *Id.* at PageID #3844.

This appeal promptly followed.

## II.   DISCUSSION

On appeal, Bentley asks that we vacate and remand his sentence on the grounds that the district court unreasonably "consider[ed] and plac[ed] so much weight on his political beliefs." Appellant Br. 16. The government counters that Bentley's sentence was reasonable because "[a] sentencing court may consider a defendant's otherwise-protected speech or conduct . . . as long as that information relates to the 18 U.S.C. § 3553(a) sentencing factors[,]" and Bentley's below-guidelines sentence fits his crimes. Appellee Br. 9.

### A. Standard of Review

Bentley concedes that because he did not object at sentencing, we must review his procedural unreasonableness claim for plain error. *See United States v. Cabrera*, 811 F.3d 801, 808 (6th Cir. 2016). Under that standard, Bentley "must 'show (1) error (2) that "was obvious or clear," (3) that "affected defendant's substantial rights" and (4) that "affected the fairness, integrity, or public reputation of the judicial proceedings."'" *Id.* (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).

We review the substantive reasonableness of Bentley's sentence, however, for abuse of discretion, regardless of whether Bentley preserved that challenge with an objection at the time of sentencing. *See United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022); *United States v. Peppel*, 707 F.3d 627, 633–34 (6th Cir. 2013). The litigant's "duty" with respect to substantive reasonableness is only to "explain the grounds for leniency" at sentencing, and Bentley did so. *Peppel*, 707 F.3d at 633 (quoting *Vonner*, 516 F.3d at 389).

### B. Procedural Reasonableness

Bentley claims that his sentence is procedurally unreasonable because the district court impermissibly considered his political beliefs when devising it. Because the district court properly addressed Bentley's political views as they related to legitimate statutory sentencing factors, we disagree.

Procedural errors in sentencing are those that pertain to whether the district court took the proper steps in determining the sentence. For example, procedural errors include failing to properly calculate the advisory guidelines range, treating the guidelines as mandatory, not considering the 18 U.S.C. § 3553(a) factors, incorporating impermissible factors, relying on clearly erroneous facts, or inadequately explaining the sentence. *Gardner*, 32 F.4th at 529; *United*

*States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)); *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) (quoting *Gall*, 552 U.S. at 51); *United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012) (same). A factor might be impermissible if it "is neither enumerated in nor consistent with the Sentencing Guidelines or 18 U.S.C. § 3553(a)." *Cabrera*, 811 F.3d at 808.

A sentencing court's "inquiry is 'broad in scope[]' and . . . 'largely unlimited . . . as to the kind of information [it] may consider . . . .'" *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). That scope extends beyond the conduct underlying the conviction "or even illegal conduct[,]" as long as the information "relate[s] to one of the § 3553(a) factors." *United States v. Cunningham*, 669 F.3d 723, 735 (6th Cir. 2012) (first quoting *United States v. Mull*, 53 F.3d 332, 332 (6th Cir. 1995) (unpublished table decision), and then citing *United States v. Kontrol*, 554 F.3d 1089, 1094 (6th Cir. 2009)). Details of a defendant's "life and characteristics" are "[h]ighly relevant . . . to [the] selection of an appropriate sentence . . . ." *Pepper v. United States*, 562 U.S. 476, 480 (2011) (alterations in original) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)); *see* 18 U.S.C. § 3661.

Although courts may not punish defendants for their "abstract beliefs, however obnoxious to most people," *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993), the U.S. Supreme Court has held that a defendant's personal beliefs could be a proper factor where relevant to the proceeding. *See Dawson v. Delaware*, 503 U.S. 159, 164–65 (1992). There is no "*per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.* at 165; *see also Mitchell*, 508 U.S. at 486. Such evidence can often "serve a legitimate purpose in showing that a defendant

represents a future danger to society." *Dawson*, 503 U.S. at 166; *see also Rayyan*, 885 F.3d at 441 (holding that "the government may hold defendants to account for what they say if that speech and related conduct reveals . . . a factor that aggravates a sentence" and that evidence "shed[s] light on [the] sort of danger [defendant] presented to the public . . . and what kind of sentence would be needed to deter other[s]").

Courts of appeals for other circuits have permitted district courts to consider speech protected by the First Amendment when clearly relevant to the statutory sentencing factors. *See, e.g.*, *United States v. Brown*, 26 F.4th 48, 66–68 (1st Cir. 2022) (holding that defendant's "beliefs about the authority of the government or the criminal laws" properly factored into the sentencing court's assessment of the need to promote respect for the law, to deter defendant and others, and to protect the public); *United States v. Serrapio*, 754 F.3d 1312, 1323 (11th Cir. 2014) (finding that considering defendant's statements that were relevant to legitimate sentencing factors was different from punishing defendant for abstract beliefs); *United States v. Stewart*, 686 F.3d 156, 167 (2d Cir. 2012) (holding that the sentencing court's consideration of defendant's public statements trivializing the sentence and reflecting "lack of remorse" did not violate First Amendment rights); *United States v. DeChristopher*, 695 F.3d 1082, 1099 (10th Cir. 2012) (holding that "[d]efendant's statements that he would 'continue to fight' and his view that it was 'fine to break the law' were highly relevant to [the] sentencing factors[,] [s]o the district court did not violate the First Amendment by considering [those] statements when imposing sentence"); *United States v. Simkanin*, 420 F.3d 397, 417 (5th Cir. 2005) (holding that defendant's belief that tax laws were invalid "demonstrate[d] a likelihood of recidivism" and were properly considered at sentencing); *United States v. Smith*, 424 F.3d 992, 1016–17 (9th Cir. 2005) (holding that the district court properly considered defendant's views about district court's lack of jurisdiction

because they demonstrated lack of remorse and continuing threat to the public, which were relevant to several sentencing factors); *Kapadia v. Tally*, 229 F.3d 641, 642, 647–48 (7th Cir. 2000) (holding that defendant's anti-Semitic statements were permissibly considered at sentencing for burglary and arson of a Jewish community center as relevant to likelihood of rehabilitation and amount of danger to community); *see also United States v. Schmidt*, 930 F.3d 858, 859 (7th Cir. 2019) (holding that defendant's "white supremacist beliefs . . . were relevant to legitimate sentencing considerations").

The district court took all of the proper steps in arriving at Bentley's sentence. Bentley does not contest that the district court accurately calculated the advisory guidelines range. The district court discussed the pertinent § 3553(a) factors at length and thoughtfully explained the sentence.

To the extent that Bentley contends that the district court relied on the purportedly erroneous fact that Bentley subscribed to a sovereign-citizen ideology, we disagree. First, that characterization strikes us as reasonable, if not accurate. The sovereign citizen movement is amorphous and decentralized, but those who have studied the movement describe one of its central tenants as the belief that the modern federal government lacks jurisdiction over non-consenting individuals. *See* Paige White, *Sovereign Citizen Gurus: Inciting A Lawless World*, 63 U. Louisville L. Rev. 455, 455–56 (2025); Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 154–55 (2019); Michael N. Colacci, *Sovereign Citizens: A Cult Movement that Demands Legislative Resistance*, 17 Rutgers J. L. & Religion 153, 153–55 (2015); Erica Goode, *In Paper War, Flood of Liens Is the Weapon*, N.Y. Times (Aug. 23, 2013), https://perma.cc/2Z83-97EH. Bentley's proclamations, including that he "follow[s] God's law[,]" echo that belief. Sentencing Tr., R. 245, PageID #3831. Second, the district court did not rely on

the sovereign-citizen label for Bentley's ideology in reaching its sentence. Rather, it dealt substantively with Bentley's underlying arguments when weighing the sentencing factors.

Bentley's main argument is that the district court considered an impermissible factor: his political beliefs. We need not decide whether Bentley's comments about the authority of the government were protected by the First Amendment. Even if they were, the district court's treatment of them was proper. Not only was consideration of Bentley's antigovernment assertions consistent with the § 3553(a) factors; those assertions were very relevant to those factors, as the district court clearly explained. They revealed characteristics of Bentley that made promoting respect for the law, deterrence, and protecting the public more difficult. Bentley's insistence that he had done nothing criminal and that the court could not hold him accountable plausibly increased the likelihood that he would continue to break the law. Nothing in the court's language at sentencing suggested that the court was punishing Bentley for abstract beliefs. Rather, the court considered how those beliefs related to Bentley's criminal conduct and the expected results from the array of available punishments.[1] Therefore, Bentley's statements regarding the United States' legal system fell well within the broad purview of the sentencing court.

The district court did not commit error, let alone clear or obvious error, by considering Bentley's consistent rejection of government authority in imposing his sentence. As Bentley

---

[1] Bentley relies on *United States v. Bakker*, 925 F.2d 728 (4th Cir. 1991), which he misattributes to the Eleventh Circuit. That case is not binding in the Sixth Circuit and is unpersuasive. In *Bakker*, the Court of Appeals vacated the defendant's sentence based on the district court's remark that "*those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests.*" *Id.* at 740. The sentence "may have reflected the . . . court's own sense of religious propriety . . . ." *Id.* at 741. In the present case, the district court expressed no personal sentiment, as occurred in *Bakker*, but rather discussed how the district court viewed Bentley's political beliefs as contravening the statutory purposes of criminal sentencing.

founders at the threshold, we need not address the effects on Bentley's substantial rights or on the judicial proceedings.

## C. Substantive Reasonableness

Bentley argues that his sentence is substantively unreasonable because the district court placed too much weight on his political beliefs and the need to promote respect for the law. Bentley fails, though, to overcome the presumption that his below-guidelines sentence is reasonable.

A sentence may be substantively unreasonable if it is longer or shorter than necessary to "advance" the goals of 18 U.S.C. § 3553(a). *United States v. Ely*, 468 F.3d 399, 403 (6th Cir. 2006). That outcome might occur if the sentencing court "selects a sentence arbitrarily . . . or gives an unreasonable amount of weight to any pertinent factor." *Adkins*, 729 F.3d at 571 (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)); *see also Rayyan*, 885 F.3d at 442. When substantively reviewing a sentence, we consider the "totality of the circumstances" and "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of [any] variance" from the guidelines range. *Gall*, 552 U.S. at 51. We do not reverse the district court merely because we "might reasonably have concluded that a different sentence was appropriate . . . ." *Id.*

Bentley "bears a heavy burden in showing that his sentence . . . is unreasonable." *Cunningham*, 669 F.3d at 733. That burden is especially heavy because Bentley challenges a below-guidelines sentence. *See United States v. Fields*, 763 F.3d 443, 455 (6th Cir. 2014) (quoting *United States v. Taylor*, 557 F. App'x 475, 475 (6th Cir. 2014)). We recognize a rebuttable presumption of reasonableness for sentences within the advisory guidelines range. *Adkins*, 729 F.3d at 570–71; *see also Cabrera*, 811 F.3d at 808 (citing *United States v. Liou*, 491 F.3d 334, 337

n.2, 339 (6th Cir. 2007)). *A fortiori*, we presume that a sentence below the guidelines range is not unreasonably long. Bentley's 284-month prison sentence is presumptively reasonable because it falls below the guidelines range of 294 to 346 months.

Sentencing courts need not place equal weight on each of the § 3553(a) factors. The proper degree of attention for each factor depends on the facts of the case. *Gardner*, 32 F.4th at 531 (holding that "'[n]ot all' § 3553(a) factors 'are important in every sentencing'" and defendant's preference that district court weigh factors differently did not signal abuse of discretion (alteration in original) (first quoting *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007), and then citing *United States v. Robinson*, 892 F.3d 209, 216 (6th Cir. 2018))); *Adkins*, 729 F.3d at 571 (citing *Zobel*, 696 F.3d at 571–72). The district court's approach "to balanc[ing] the applicable sentencing factors is beyond the scope of th[is] Court's review." *Adkins*, 729 F.3d at 571 (citing *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008), and *Ely*, 468 F.3d at 404); *see also Rayyan*, 885 F.3d at 442 ("[T]his is a matter of reasoned discretion, not math . . . ." (citing *Gall*, 552 U.S. at 51)). When the district court has "consider[ed] and weigh[ed] all pertinent factors, a defendant clearly bears a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *Adkins*, 729 F.3d at 571 (quoting *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir. 2011)).

Bentley's argument that the district court weighed any factor too heavily is unpersuasive. We are not convinced that the district court placed greater weight on the need to promote respect for the law or Bentley's political beliefs than on the seriousness of the offense, the need to protect the public, or Bentley's personal history and characteristics. The district court spoke ardently about the quantity of drugs driving the guideline range and the harms attributable to the "methamphetamine epidemic in th[e] region." Sentencing Tr., R. 245, PageID #3833. It also

focused on the seriousness of the firearm offense and "the impact on th[e] officer" of Bentley's brandishing and discharging a gun, purposefully or not. *Id.* at PageID #3828. It gave ample time to the need to protect the public, the need for adequate deterrence, the circumstances of Bentley's involvement, and Bentley's personal history and characteristics. The district court's contemplation of all of those factors increases Bentley's burden in showing any one factor received inappropriate attention. Certainly, the district court scrutinized Bentley's lack of respect for the law and arguments about government authority, but the transcript does not reflect disproportionate emphasis on those points.

Even if the district court had weighed respect for the law and Bentley's political beliefs more heavily than the other pertinent factors, it would have been within its discretion to do so. We do not vacate a sentence as "substantively unreasonable because a court places greater weight on some factors than others." *United States v. Gates*, 48 F.4th 463, 478 (6th Cir. 2022) (citing *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020)). The importance of instilling respect for the law is salient in this case, given that Bentley has freely and continuously disputed the authority of the United States to discipline him for dangerous crimes and fled, armed, from law enforcement. The circumstances of this case merit extra focus on that goal. *See Zobel*, 696 F.3d at 571–72 ("The district court certainly attached significant weight to public safety concerns, but '[a] district court does not commit reversible error simply by "attach[ing] great weight" to a single factor.'" (alterations in original) (quoting *Thomas*, 437 F. App'x at 458)); *Adkins*, 729 F.3d at 572 ("[T]he court acted within its discretion by placing more 'weight on one factor' because the particular facts in this case warranted doing so." (quoting *Zobel*, 696 F.3d at 571–72)).

Bentley cites the district court's admonition at the sentencing hearing that he should not "pass on to [his] daughter all these meritless views . . . [or] teach her to minimize and to blame

others" as evidence that the court was more concerned about Bentley's views than his criminal conduct. Sentencing Tr., R. 245, PageID #3843. But that reproach does not evince disproportionate focus on Bentley's beliefs. Nor does it indicate that the court intended its sentence to punish Bentley for his ideology or chill his expression. It merely reflects the district court's candid worries about Bentley's refusal to recognize the seriousness of his crimes and the need to deter and protect the public, in addition to instilling respect for the law.

Essentially, Bentley would like this Court to require the district court to weigh the factors differently. *See Sexton*, 512 F.3d at 332 ("It is reasonable . . . for the district court to have given significant weight to general deterrence and retribution . . . . [Defendant's] argument . . . boils down to an assertion that the district court should have balanced the § 3553(a) factors differently . . . ."). But the district court is far more familiar with the facts and evidence in this case, and we are not at liberty to second-guess it, absent an abuse of discretion. The district court did not abuse its discretion in finding that the § 3553(a) factors did not merit reducing Bentley's sentence further below the guideline range. *See United States v. Sherrill*, 972 F.3d 752, 771–72 (6th Cir. 2020).

### III. CONCLUSION

The district court did not plainly err by considering the political views about the authority of the United States' criminal laws and courts that Bentley vocalized throughout the litigation and at sentencing. Neither did the district court abuse its discretion by imposing a substantively unreasonable sentence for Bentley's drug trafficking and firearm offenses. Therefore, we **AFFIRM** Bentley's sentence.