RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0338p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

05-6586

RITCHIE G. KENNEDY,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 04-00006—J. Ronnie Greer, District Judge.

Argued: May 31, 2007

Decided and Filed: August 24, 2007

Before: GIBBONS and COOK, Circuit Judges; and CLELAND, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Mary Ellen Coleman, Chattanooga, Tennessee, for Appellant. Caryn L. Hebets, UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellant. Guy W. Blackwell, UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

COOK, Circuit Judge. Ritchie G. Kennedy, who pleaded guilty to distributing child pornography in violation of 18 U.S.C. § 2252A, now appeals his 87-month sentence and life term of supervised release. Kennedy asserts that the district court violated his Fifth Amendment right against self-incrimination by drawing a negative inference from his refusal to complete a psychosexual examination prior to sentencing, and he urges that his life term of supervised release is unreasonable. We affirm.

_____

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

I

Federal Bureau of Investigation (FBI) agents arrested Kennedy after he emailed an image of child pornography to an undercover agent. Searching Kennedy's computer, the FBI uncovered seventy-seven images of child pornography in his email account. Kennedy cooperated with the FBI, admitting that he had sent additional images to the undercover agent and had electronically traded images with others.

The district court accepted Kennedy's guilty plea, but deferred sentencing until the probation officer could prepare a presentence investigation report (PSR). To this end, the probation officer requested that Kennedy undergo a psychosexual evaluation, which consists of an interview, plethysmograph, and polygraph. Kennedy moved the court to reject the request, but the court denied Kennedy's motion and ordered that he be evaluated. Kennedy moved the court to reconsider, asserting that the examination would violate his Fifth Amendment right against self-incrimination.

The district court again denied Kennedy's motion, holding that (1) it had authority to order the examination under 18 U.S.C. § 3552(b) and (c), which permit the court to "order a study of the defendant"; and that (2) although Kennedy maintained a Fifth Amendment right against self-incrimination through sentencing under *Mitchell v. United States*, 526 U.S. 314 (1999), he must assert that right "on an issue by issue basis, [and] not as a blanket claim." Kennedy filed a Notice of Appeal and had submitted a proof brief when the government asked the district court to revoke Kennedy's bond and order him incarcerated. The district court, troubled by Kennedy's adamance in opposing the examination, found that Kennedy posed a danger to the public, revoked his bond, and remanded him to custody. *See* 18 U.S.C. § 3143(a)(1).

Seeking to avoid a lengthy presentence prison stay, Kennedy voluntarily dismissed his appeal and agreed to be examined. The probation officer contracted with Counseling and Consultation Services (CCS) to conduct the examination. CCS successfully interviewed Kennedy, but soon after starting the plethysmograph portion of testing, CCS's machine malfunctioned and testing terminated. CCS contacted Kennedy's lawyer, who was unaware that CCS had examined Kennedy in her absence, to inform her that they would have to finish testing at a later date. Kennedy and CCS, however, never completed the psychosexual examination.

At Kennedy's sentencing hearing, the district court acknowledged that the PSR calculated the appropriate Guidelines-recommended range as 70 to 87 months, and that both parties agreed a sentence within that range would be reasonable. The government did not seek a specific Guidelines sentence, but it did request a life term of supervised release. Kennedy's counsel pressed for the lowest Guidelines sentence and contested life supervision.

In making its determination, the district court considered Kennedy's incomplete psychosexual evaluation highly relevant, explaining:

> One of the things that bears heavily in terms of any decision I have to make about lifetime supervision is . . . Kennedy's unwillingness to give the court any assurance that he's not dangerous. He refused to take the polygraph and has fought tooth and nail against having the evaluation that this court ordered, and in fact has apparently managed to obstruct it. What am I to make of that?

Kennedy's counsel maintained that her client was merely following her advice, and that the local Federal Defender's Offices had adopted a policy of opposing on Fifth Amendment grounds polygraph testing for defendants not yet sentenced, though later discussion suggested that the offices' concerns had yet to crystallize into a formal policy. Kennedy was willing to submit to the polygraph and plethysmograph, she said, after sentencing or as part of supervision, but not prior to sentencing.

The district court balked at this position:

> One of the factors that I have to consider is the need to impose a sentence that will protect the public from further crimes of the defendant, and that's where the discussion we've had about your refusal to submit to a polygraph and your refusal to submit to initially and to complete the psychosexual evaluation ordered by the court comes into play. By not having the results of those, I can't properly assess what the risk is that you will further offend. I can't properly assess what kind of danger you pose to the community.
>
> . . . . [Q]uite simply, your actions, whether they're your conscious actions or whether you were following advice of counsel, have deprived me of in this case of having the information I need to make that determination.

And the court took pains to provide a record for appellate review:

> So that the record will be clear for the Sixth Circuit . . . , I do think that your refusal to submit to a polygraph and your refusal to submit to and complete a psychosexual evaluation are factors that are to be considered by this court in determining not only a reasonable term of imprisonment, but also a reasonable term of supervised release.

The court further stated that it could not "risk not assuming that he is a danger to the public" and, consequently, felt it should order lifetime supervision. At this point, Kennedy's counsel replied, "I think you can impose the life supervision, and that way . . . you will be able to know after the fact . . . supervision wise . . . what needs to be done to treat him. . . . [But] [p]unishment should be separate from supervision; that's all I ask."

The court then inquired into the situation with CCS and the malfunctioning machine, and the parties offered conflicting accounts as to why they did not complete testing. Kennedy's counsel maintained that CCS was unwilling to proceed after learning that, as she saw it, she was meant to be present from the outset. The probation officer, in contrast, reported that although CCS was initially unaware that Kennedy's counsel desired to be present, CCS was willing to go through with testing if the parties agreed. But, as Kennedy's counsel had already expressed Kennedy's unwillingness to again submit to the testing, the district court responded, "All right," and then addressed Kennedy directly about its sentencing determination:

> I have considered very carefully the need to protect the public from further crimes committed by you; and . . . I feel like that I do not have sufficient information, information that would otherwise be available, on which to base a complete judgment about whether or not the sentence I'm about to impose is necessary to protect the public from further crimes.

The court sentenced Kennedy to 87 months, the highest Guidelines-recommended sentence. Addressing the appropriate term of supervised release, the court again stressed its position for the record, explaining as follows:

> So that the record will be clear, . . . I am assuming based upon what appears to the court to be your unwillingness to . . . participate in appropriate testing, that you are in fact a danger, which, therefore, requires that I impose a lifetime term of supervised release; so upon release from imprisonment, you shall be placed on supervised release for a term of life.

II

We review a defendant's sentence for reasonableness, crediting a sentence within the Guidelines range with a presumption of reasonableness. *United States v. Williams*, 436 F.3d 706 (6th Cir. 2006); *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007). Reasonableness encompasses both a substantive and a procedural component. *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006); *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006). "A sentence may be considered substantively unreasonable when the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent [18 U.S.C.] § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). Procedural reasonableness requires that the sentencing court adequately consider the § 3553(a) factors, including a correctly calculated Guidelines range. *See McBride*, 434 F.3d at 475–76; *see also Rita*, 127 S. Ct. at 2468 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.").

A.  Fifth Amendment Challenge

Kennedy argues that the district court improperly took account of his unwillingness to complete the ordered psychosexual examination. We conclude, however, that it was well within the district court's discretion to consider Kennedy's refusal when selecting its sentence. Congress has explicitly authorized sentencing courts to "order a study of the defendant," including "psychiatric or psychological examination" to determine "the mental condition of the defendant," 18 U.S.C. § 3552(b) and (c); and has instructed that "[n]o limitation shall be placed" on what information may be considered by the court in making its sentencing determination, *id.* § 3661. Although Kennedy contends that the district court's express reliance on his refusal offended his Fifth Amendment rights and *did* limit the court's consideration, *Mitchell* makes clear that it did not.

In *Mitchell*, the Supreme Court held that (1) in the federal criminal system, a guilty plea does not waive the privilege against self-incrimination at sentencing, and (2) a sentencing court may not draw an adverse inference from a defendant's silence in determining facts relating to the circumstances and details of the crime. 526 U.S. at 324, 328. The *Mitchell* majority, however, explicitly limited its holding regarding inferences drawn from a defendant's silence to facts about the substantive offense and did not address other inferences that may be drawn from a defendant's silence: "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question. It is not before us, and we express no view on it." *Id.* at 330. Justice Scalia, dissenting for four Justices, underscored *Mitchell*'s narrowness, observing that

> the clutter swept under the rug by limiting the opinion to 'determining facts of the offense' is not merely application of today's opinion to § 3E1.1, but its application to *all* determinations of acceptance of responsibility, repentance, character, and *future dangerousness*, in both federal and state prosecutions—that is to say, to what is probably the *bulk* of what most sentencing is all about.

*Id.* at 340 (Scalia, J., dissenting) (second emphasis added).

Kennedy's case implicates Justice Scalia's "clutter swept under the rug," as the district court plainly considered Kennedy's refusal to complete testing in determining his propensity for future dangerousness, rather than in determining facts of the offense. Given the narrowness of its holding, *Mitchell* simply does not limit the district court's ability to consider a wide variety of "information

concerning the background, character, and conduct" of the defendant in determining an appropriate sentence, 18 U.S.C. § 3661; to "order a study of the defendant," *id.* § 3552(b); and, therefore, to consider the defendant's refusal to cooperate in assessing what sentence is necessary "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C). In fact, as Justice Scalia aptly observed, "Few facts available to a sentencing judge . . . are more relevant to 'the likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society' than a defendant's willingness to cooperate." *Mitchell*, 526 U.S. at 339 (Scalia, J., dissenting) (quoting *Roberts v. United States*, 445 U.S. 552, 558 (1980)).

Thus, because the district court's consideration of Kennedy's refusal was not improper, because the record demonstrates the court's candid and thorough consideration of the § 3553(a) factors in determining Kennedy's sentence, and because Kennedy cannot overcome the presumption of reasonableness credited to within-Guidelines sentences, we do not find Kennedy's 87-month sentence unreasonable.

## B.  Lifetime Supervision Challenge

Kennedy separately challenges the district court's selection of lifetime supervised release. But counsel's statement to the court during sentencing, in which she explicitly advised the court that it could appropriately account for the defendant's potential for future dangerousness by imposing lifetime supervision, puts counsel in the untenable position of having agreed in "open court with a judge's proposed course of conduct and [now] charg[ing] the court with error in following that course." *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (internal quotations omitted). Doing so represents the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 732–33 (1993). Consequently, Kennedy waived this challenge.

Waiver notwithstanding, this challenge would fail on its merits because we do not consider the district court's supervised-release decision unreasonable. Congress insists that lifetime supervision be available to courts in sentencing sexual offenders: in this case, 18 U.S.C. § 3583(k) expressly authorized the court to subject Kennedy to a life term of supervised release because Kennedy's crime constituted a violation of 18 U.S.C. § 2252A. Congress provided this option in response to the

> long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.

H.R. Rep. No. 108-66, at 49-20 (2003) (Conf. Rep.), *reprinted in* 2003 U.S.C.C.A.N. 683, 684. The Sentencing Guidelines, also, mirror the lifelong supervision provided for in the statute: although the Guidelines range of supervised release is between two and three years for a defendant convicted of a Class C or D felony, as here, *see* U.S.S.G. § 5D1.2(a)(2), that section contains a clear caveat, providing that for "a sex offense, however, [lifetime] supervised release is recommended," *id.* § 5D1.2(c), policy statement. We agree with the Fifth Circuit that, "[r]eading 18 U.S.C. § 3583(k) together with the policy statement in § 5D1.2(c) indicates that the Congress and the Sentencing Commission intended to impose life terms of supervised release on sex offenders." *United States v. Allison*, 447 F.3d 402, 405 (5th Cir. 2006). In light of these considerations, the district court reasonably subjected Kennedy to lifetime supervised release.

And finally, as with the selection of Kennedy's prison term, the district court did not err in considering Kennedy's refusal to complete the psychosexual examination in selecting a term of supervision, and its thorough regard for the § 3553(a) factors demonstrates a reasonable decision.

III

For the foregoing reasons, we affirm.