SUTTON, J., delivered the opinion of the court in which, BOGGS, J., joined. MOORE, J. (pp. 605-09), delivered a separate dissenting opinion.
OPINION
SUTTON, Circuit Judge.
Stephen Graham-Wright challenges the procedural and substantive reasonableness of his sentence, complaining in particular about the district court’s consideration of statements he made to a psychiatrist during a pretrial competency examination and of the psychiatrist’s diagnosis that he was a pedophile. We must affirm.
I.
In October. 2010, Stephen Graham-Wright repeatedly directed his girlfriend’s six-year-old sister to pose nude in photographs and videos. He also touched the young girl’s genitalia on multiple occasions. When the girl’s parents became suspicious, they alerted the police. Graham-Wright confessed, and the police found sexually explicit pictures and videos of the girl on his cell phone and computer.
After the police arrested Graham-Wright, his lawyer filed a motion under 18 U.S.C. § 4241 for a government-paid “in-custody examination regarding competency and cognitive function.” R. 14. Graham-Wright asked that the results of that examination be provided qnly to him. Section 4241 allows either party to request a competency hearing, but it requires the results of any examination to “be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government.” Id. §§ 4241(b), 4247(c). The district court granted Graham-Wright’s motion for an examination, but it denied his request that only the defendant receive the results.
A psychiatric examination was scheduled at the Metropolitan Correctional Center in Chicago. Before the examination, staff informed Graham-Wright that the results would “not [be] confidential” and would be provided to the prosecution and the court. R. 25 at 1. Graham-Wright conferred with his lawyer before discussing any of the details of the offenses and went forward with the examination. The psychiatrist found him competent to stand trial but diagnosed him with pedophilia. Graham-Wright pled guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e).
Before sentencing, Graham-Wright objected to the inclusion of information from *601 the psychiatric examination in his pre-sen-tence report. In particular, the pre-sen-tence report included the pedophilia diagnosis and the fact that he fantasized about having sex with children. The guidelines generated a range of 360 months to life. Because 360 months was the statutory maximum, that figure became the top and bottom of the guidelines range. The district court sentenced him to 360 months, rejecting his request for a downward variance.
II.
A.
In attacking the procedural reasonableness of his sentence, Graham-Wright claims that the district court should not have considered information from the psychiatric examination in sentencing him because the court obtained that information in violation of his Fifth Amendment right against self-incrimination. The examination, as an initial matter, had nothing to do with the starting point for sentencing Graham-Wright: the guidelines range. Even in the absence of an examination, Graham-Wright warranted a 360-month guidelines “range” for this offense, and he does not argue to the contrary.
What Graham-Wright protests is the court’s consideration of information from the examination in denying his request for a downward variance to 180 months. But evidentiary inclusiveness is the order of the day at sentencing, a frame of reference as likely to facilitate leniency as to impede it. The key question is reliability. Sentencing hearings may include evidence otherwise inadmissible at trial so long as the evidence is reliable. Roberts v. United States, 445 U.S. 552, 556, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). That is why the Rules of Evidence do not apply at sentencing hearings. Williams v. New York, 337 U.S. 241, 251, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); see also United States v. Silverman, 976 F.2d 1502, 1509-14 (6th Cir.1992) (en banc). That is why the Confrontation Clause does not apply at sentencing. United States v. Katzopoulos, 437 F.3d 569, 576 (6th Cir.2006); see also United States v. Hamad, 495 F.3d 241, 246-47 (6th Cir.2007). And, of import here, that is why Miranda generally does not apply at sentencing. A sentencing court may consider “statements obtained in violation of Miranda, if they are otherwise voluntary” and reliable. United States v. Nichols, 438 F.3d 437, 442 (4th Cir.2006); accord Del Vecchio v. Ill. Dep’t of Corr., 31 F.3d 1363, 1388 (7th Cir.1994) (en banc); see also Oregon v. Elstad, 470 U.S. 298, 307, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (“[T]he Miranda presumption, though irrebuttable for purposes of the prosecution’s case in chief, does not require that the statements and their fruits be discarded as inherently tainted.”); cf. United States v. Jenkins, 4 F.3d 1338, 1345 (6th Cir.1993) (permitting the use of illegally seized evidence at sentencing). In the absence of coercion, excluding otherwise reliable information from sentencing hearings would require probation officers to give Miranda warnings before conducting presentencing interviews — a possibility rejected long ago. See United States v. Davis, 919 F.2d 1181, 1186-87 (6th Cir. 1990). When all is said and done, a sentencing judge’s inquiry is “broad in scope,” and it is “largely unlimited either as to the kind of information he may consider, or the source from which it may come.” United States v. Tucker, 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).
Gauged by these modest limitations, Graham-Wright’s sentence was neither procedurally unreasonable nor a violation of the Fifth Amendment privilege against *602 self-incrimination. It was Graham-Wright, not the district court, who requested the examination. Graham-Wright consulted with counsel just before discussing the details of his offense and after being warned that the court would have access to the results of the examination. Everything in the record suggests he voluntarily submitted to the examination and spoke voluntarily during it. And nothing shows that the court compelled him in either respect. Through it all, Graham-Wright and his counsel had ample reason to undertake an examination (the results might have shown he was incompetent to stand trial), and the district court had ample reason to know the results of the test (ditto). This evidence was reliable, and the district court had discretion to consider it.
In arguing to the contrary, Graham-Wright invokes Estelle v. Smith, 451 U.S. 454, 468-69, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), which held that a state court violated a capital defendant’s right against self-incrimination by relying on the results of an involuntary examination to prove an aggravating factor. The italicized words confirm the limits of Estelle’s domain.
First, Estelle applies to capital sentencing proceedings, not all sentencing proceedings. As the Supreme Court has subsequently explained, the holding of Estelle was limited to “the ‘distinct circumstances’ of that case.” Buchanan v. Kentucky, 483 U.S. 402, 422, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987) (quoting Estelle, 451 U.S. at 466, 101 S.Ct. 1866). The Court has “never extended Estelle’s Fifth Amendment holding beyond its particular facts.” Penny v. Johnson, 532 U.S. 782, 795, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). What was “distinct” and “particular” about Estelle? It was a capital case in which “the ultimate penalty of death was a potential consequence of what [Smith] told the examining psychiatrist,” 451 U.S. at 462, 101 S.Ct. 1866, as the examination results proved an aggravating factor that justified the death penalty and “on which the State had the burden of proof beyond a reasonable doubt,” id. at 466,101 S.Ct. 1866.
Nothing of the sort happened here. The examination did not go to an element of the offense or to an aggravating factor at sentencing, much less to a justification for a capital sentence. If “death is different,” Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), it follows that the difference runs in two directions — that it must be accounted for in non-capital cases, that not all capital-sentencing requirements- apply to all sentences. This is one such requirement. Graham-Wright has not pointed to any federal appellate decisions excluding the results of a psychiatrist’s examination from a non-capital sentencing, whether based on Estelle or any other case. And a half-dozen courts of appeals have rejected similar extensions. See Halley v. Thaler, 448 Fed.Appx. 518, 522 (5th Cir.2011) (“Plainly, [the defendant’s] case differs from Estelle in that it does not involve a capital offense in which the jury must make a special finding regarding future dangerousness.”); United States v. Jackson, 886 F.2d 838, 841 n.4 (7th Cir. 1989) (“seriously questioning] the rationale” of excluding evidence based on a Miranda violation in a non-capital sentencing); Baumann v. United States, 692 F.2d 565, 576 (9th Cir. 1982) (Estelle “is limited to the distinct circumstances of the bifurcated capital proceedings presented in that case”); Lee v. Crouse, 451 F.3d 598, 606 (10th Cir. 2006) (“Estelle is distinguishable because it was a capital case”); United States v. Delgado, 56 F.3d 1357, 1371 (11th Cir.1995) (Estelle “applies specifically to capital sen-teneings”); United States v. Byers, 740 F.2d 1104, 1112 (D.C.Cir.1984) (en banc) (plurality opinion) (Scalia, J.) (Estelle held *603 the Fifth Amendment applied “[b]ecause the possible consequence” of the defendant’s statements “was imposition of the death penalty”).
Our own research reveals just one appellate decision applying Estelle in this setting, United States v. Chitty, 760 F.2d 425 (2d Cir.1985), and it is at least three steps removed from today’s ease. In the course of a court-ordered psychiatric examination, the defendant threatened the life of the Assistant United States Attorney. The government relied on the threats at sentencing as a ground for incarcerating Chitty “for a very long time,” and the court of appeals ordered the statements suppressed. Id. at 430. While we cannot deny that Chitty applied Estelle to a non-capital sentencing proceeding, at least three features of the case marginalize its relevance here. First, Graham-Wright’s key objection is to the district court’s use of his diagnosis, not to statements (let alone threats) he made during the examination. Second, since Chitty, the Second Circuit has made it clear that pre-sentencing interviews do not always require Miranda warnings. See United States v. Cortes, 922 F.2d 123, 127 (2d Cir.1990). And third, the Chitty and Estelle examinations were done involuntarily, which was not the case here and which leads to our next point.
Second, even if Estelle extended to non-capital sentencing proceedings, it applies only to an involuntary psychiatric examination. Estelle, 451 U.S. at 468, 101 S.Ct. 1866. Yet Graham-Wright “initiate[d]” the idea of an evaluation. Id. He asked for a psychiatric evaluation under 18 U.S.C. § 4241, a statute that does not provide for a defense-only report. It is true that, at the hearing on the motion, Graham-Wright’s attorney indicated that he wanted what § 4241 does not permit — for a government-paid psychiatrist to perform the examination and to give the report only to the defense. The court denied Graham-Wright’s request and ordered a report that would be distributed to both parties and filed with the court.
By contrast, it is worth noting, 18 U.S.C. § 3006A allows for government-paid, defense-only reports if the defendant qualifies for in forma pauperis status. Perhaps ' Graham-Wright’s counsel would have been wise to invoke § 3006A and perhaps the court would have granted the request. Who can say? But none of this indicates that the court initiated the evaluation or that it was somehow involuntary.
Third, not only did Graham-Wright freely submit to the examination but his statements to the psychiatrist were themselves voluntary, a far cry from the kind of compelled testimony prohibited by the Fifth Amendment. No evidence shows the court or anyone else coerced, intimidated or threatened him-to speak during the examination. Just the other way: Graham-Wright conferred with his attorney before he agreed to discuss any of the details of his offense, and he was warned that his statements would be given to the court. Cf. also Roberts, 445 U.S. at 560-61, 100 S.Ct. 1358 (explaining that Miranda “protects] persons who, exposed to [coercive] interrogation without the assistance of counsel, otherwise might be unable to make a free and informed choice to remain silent”). Those factors distinguish this case from Estelle, where it was not clear the defendant’s lawyer was informed of, let alone participated in, the psychiatric exam, 451 U.S. at 471 & n. 15, 101 S.Ct. 1866, and from both Estelle and Chitty, where the defendants were not told how the exams might be used, id. at 468, 101 S.Ct. 1866; Chitty, 760 F.2d at 430-31.
All of these limitations on the application of Estelle to this case also respect United States v. Kennedy, 499 F.3d 547, 552 (6th *604 Cir.2007). It held that a sentencing court did not violate a defendant’s privilege against self-incrimination when it drew an adverse inference regarding the defendant’s future dangerousness from the defendant’s refusal to undergo a psychiatric exam. Kennedy reasoned that, although Mitchell v. United States, 526 U.S. 314, 324, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), prohibits sentencing courts from drawing an adverse inference against a defendant’s silence when determining the facts of an offense, Mitchell “does not limit the district court’s ability to consider a wide variety of ‘information concerning the background, character, and conduct’ of the defendant in determining an appropriate sentence.” Kennedy, 499 F.3d at 552 (quoting 18 U.S.C. § 3661).
Today’s case is easier than Kennedy. The district court relied on real information from a real psychiatrist after a voluntary examination. How strange to allow a sentencing court to draw an adverse inference from the silence that results from refusing to undertake a court-ordered examination yet to forbid any inferences from expert testimony after a voluntary examination. No such oddity is required. The district court permissibly considered the results from the examination in refusing to grant Graham-Wright’s request for a downward variance.
B.
Even if, for the sake of argument, the district court was incorrect, any error did not prejudice Graham-Wright. As with other constitutional errors, self-incrimination violations may be harmless. See Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (controlling opinion of Rehnquist, C.J.). At sentencing, we need not remand if, based “on the record as a whole ... the error did not affect the district court’s selection of the sentence imposed.” Williams v. United States, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).
Just so here. The alleged constitutional violation had nothing to do with Graham-Wright’s guidelines range. With or without a psychiatric examination, it would have been 360 months. And he received a within-guidelines sentence of 360 months — not a surprising outcome when the nature of the offense is taken into account. In denying Graham-Wright’s request for a downward variance, the court relied on several factors, most of which had nothing to do with the psychiatric examination. Most notably, Graham-Wright had a history of sexually inappropriate behavior around children, which was consistent, not at odds, with the examination. And the severe emotional trauma Graham-Wright imposed on the victim and her family would have given any judge pause before granting a downward variance. On this record, we can fairly assume that, even without the psychiatric report, the district court would have imposed this within-guidelines sentence.
C.
In challenging the substantive reasonableness of his sentence, Graham-Wright claims the district court was obligated to grant his request for a downward variance. No abuse of discretion occurred. See Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). A 360-month sentence is lengthy, to be' sure. But the sentence falls within the guidelines range, making it presumptively reasonable. Rita v. United States, 551 U.S. 338, 347, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Graham-Wright has not overcome that presumption. The district court expressly considered all of the § 3553(a) fac *605 tors and reasonably concluded that a guidelines sentence was appropriate.
III.
For these reasons, we affirm.