NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0632n.06

Case No. 17-6413

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Dec 20, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| ISMAIL SHALASH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SILER, MOORE, and ROGERS, Circuit Judges.

**SILER, Circuit Judge.** Ismail Shalash dealt heroin as part of a conspiracy in northern Kentucky. He pleaded guilty, without a plea agreement, to conspiring to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced him to 84 months' imprisonment, slightly below the advisory Guidelines range. Shalash appeals his sentence, claiming the district court erred by: (1) accepting the probation officer's incorrect calculation of his criminal history score; (2) holding Shalash accountable for 1.5 kilograms of heroin he voluntarily surrendered to Drug Enforcement Agency agents; and (3) relying on information in Shalash's competency evaluation. Because the government concedes that the district court plainly erred in calculating Shalash's criminal history score, we **remand** for resentencing on that issue.

But because the district court properly considered the heroin Shalash turned over and Shalash's competency evaluation, we **affirm** the district court on those issues.

**Facts and Procedural History**

Shalash obtained heroin from his dealer and then supplied it to Ryan Jacobs, another drug dealer, as part of a drug conspiracy. The conspiracy ended when police arrested Jacobs in 2015. Drug Enforcement Agency ("DEA") agents interviewed Shalash the next day, and he admitted his role in distributing the drugs. A week after his interview, Shalash voluntarily surrendered 1.5 kilograms of heroin to the DEA.

The district court granted Shalash's motion for a competency evaluation. Upon considering the report from a forensic psychologist, the district court concluded that Shalash was competent for trial. Shalash pleaded guilty to Count II of the Superseding Indictment. His plea did not address how much heroin he distributed.

The United States Probation Office prepared a Presentence Investigation Report (PSIR). Such reports consider "relevant conduct" under United States Sentencing Guideline § 1B1.3 in calculating a defendant's base offense level. Shalash conceded that 148.1 grams of heroin he obtained before October 2015 fell under the relevant conduct provision, but he maintained that the 1.5 kilograms he voluntarily turned over to the DEA on October 5, 2015 did not apply. He argued that because he had signed a confidential-informant application, he was working for the DEA when he turned in the drugs. Plus, Shalash argued, the additional heroin fell outside the temporal boundaries of the conspiracy because he acquired the drugs from a *different* source *after* the conspiracy ended. In short, according to Shalash, the district court could not view the additional heroin as relevant conduct because after police arrested Jacobs (thus ending the conspiracy) and

after his interview with the DEA, Shalash bought 1.5 additional kilos of heroin and then turned it in.

The PSIR rejected Shalash's position. It determined that Shalash possessed the 1.5 kilograms during the conspiracy, making it relevant conduct. The difference mattered: Had the district court considered only the 148.1 grams of heroin that Shalash admitted were relevant, his base offense level would have been 24. But offenses involving the distribution of one to three kilograms of heroin increase the base offense level to 30. USSG § 2D1.1(c)(5). With an acceptance of responsibility reduction under USSG § 3E1.1(a), Shalash's total base offense level was 27.

The PSIR assigned a total criminal history score of four. Under USSG ch. 5 pt. A, a criminal history score of four establishes a criminal history category of III. The Probation Office reached that score by assigning one point for each prior case for which Shalash had been sentenced in state court. But in three of those cases, Shalash was sentenced on the same day: February 4, 2011. And under USSG § 4A1.2, sentences imposed on the same day are treated as a single sentence when there is no intervening arrest. USSG §4A1.2(a)(2). No arrest separated at least two of Shalash's crimes. Shalash never objected to his criminal history score. He raises his miscalculation argument for the first time on appeal.

With a criminal history category III and a base offense level of 27, Shalash faced a Guidelines range of 87 to 108 months. The district court sentenced Shalash to 84 months' imprisonment and three years of supervised release. Shalash did not object to the sentence beyond the 1.5 kilograms as relevant conduct. In determining Shalash's sentence, the district court (1) accepted the PSIR's criminal history score, (2) accepted the PSIR's finding that the

1.5 kilograms of heroin constituted relevant conduct, and (3) relied, in part, on Shalash's competency report.

On whether the additional drug amount fell under the relevant conduct provision, the district court found that Shalash's explanation—that he obtained the heroin after the conspiracy ended—was false. Instead, the district court determined that Shalash acquired and possessed the heroin before Jacobs's arrest and only later gave it to the DEA. Testimony from two DEA agents supported that conclusion. Agent Anderson Muse testified that despite Shalash's interest in becoming a confidential informant, he never fully completed the process. The agents told Shalash that if he wanted to set up a controlled buy with his supplier, he would have to contact the DEA first. But for a full week, they heard nothing from Shalash. And then, balled up with tape and sitting in a crock pot, 1.5 kilograms of heroin arrived in the DEA's office.

Shalash had not mentioned the additional heroin during his interview the week earlier. So the agents questioned Shalash about the origin of the drugs. He said that he had obtained the drugs from two Hispanic males at an IHOP restaurant in Ohio after his first interview. But nothing corroborated Shalash's story. And, as Agent Muse testified, Shalash could not recall what type of car the suppliers were in or what time of day he went to the IHOP. In short, Shalash provided "no clue who the people were or where [the heroin] came from." R. 179, PageID #545.

At some point, agents contacted a Hispanic male who appeared at the location where Shalash allegedly obtained the heroin. However, that man "had no clue what was going on with anything," and he "ha[d] nothing to do with [the] dope." *Id*. Agents also determined that the drugs Shalash turned in happened to be the same tan heroin that had been distributed in the Jacobs-Shalash conspiracy.

DEA agents then interviewed Jacobs ten days after Shalash turned over the heroin. Jacobs told agents that Shalash had been in possession of two kilograms of heroin during the conspiracy. He knew this, he claimed, because he had personally seen Shalash with the heroin. In other words, Jacobs told agents that Shalash showed him a large quantity of heroin before Jacobs's September 28, 2015 arrest—that is, *during* the conspiracy. Jacobs did not testify at the sentencing hearing. Nor did Shalash.

Ultimately the district court determined that Shalash's story was fiction.. Thus, the court accepted the PSIR's relevant-conduct recommendation and set Shalash's base offense level at 30, which was adjusted downward to 27 for acceptance of responsibility.

The district court also considered Shalash's competency report at sentencing. Shalash voluntarily consented to the exam after being informed that the report would be given to the court and the prosecution. At sentencing, the district judge stated, "the information in the competency evaluation, the Court evaluated that too. I may have varied a little bit more, but for the fact that there's some information in that evaluation which I think doesn't weigh favorably for [Shalash]." R. 188, PageID #592. The court did not identify what information it had relied on, but the evaluation contained critical descriptions of Shalash. For example, the report stated that Shalash was hyperactive, agitated, and impulsive, and his mood labile—factors that tend to lead people to exercise poor judgment and a lack of self-control. The report also characterized Shalash as extremely manipulative, self-confident, and narcissistic and stated that he "may react to minor events with erratic, hostile behavior." Shalash did not object to the district court's use of the competency report.

**Discussion**

**A. Criminal History Calculation**

First, Shalash argues that the district court committed plain error when calculating his criminal history score. The United States agrees, and so do we.

"Under the advisory Guidelines, we review a criminal defendant's sentence for reasonableness." *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018). In reviewing the calculation of a Guideline range, we review the district court's legal conclusions de novo and its factual findings for clear error. *See United States v. Taylor*, 648 F.3d 417, 431 (6th Cir. 2011). Plain-error review applies to the calculation of Shalash's criminal history score because he did not object at the district court. *See United States v. Tanner*, 837 F.3d 596, 601 (6th Cir. 2016).

"Failure to calculate the Guidelines range correctly generally results in plain error." *Id.* at 601. Here, the parties agree that the error in miscalculating Shalash's criminal history score was plain. Shalash's Guidelines range should have been 78 to 97 months. *See* USSG ch. 5 pt. A. Instead, the PSIR set his Guidelines range at 87 to 108 months. (R. 179, PageID #473). We **remand** for resentencing on this issue.

**B. Relevant Conduct**

Next, Shalash argues that the district court improperly determined that the 1.5 kilograms of heroin he turned over to the DEA constituted relevant conduct for a sentencing enhancement under USSG § 1B1.3. The parties dispute the proper standard of review. The government argues that clear error review applies because a "district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should be upheld unless clearly erroneous." *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013). But Shalash argues that the cases on which the government relies are *approximation* cases—instances in which the district

court estimated the amount of drugs attributable to the defendant. Here, the parties agree as to the amount of drugs in dispute: 1.5 kilograms. The only issue for the district court was determining when Shalash acquired the heroin. And Shalash argues that because "a district court's relevant-conduct determination involves the application of law to facts," de novo review applies. *Amerson*, 886 F.3d at 573. We need not determine which standard applies. Under either, we find no error.

A sentencing court may consider acts "that occurred during the commission of the offense of conviction." USSG § 1B1.3(a)(1). Relevant conduct may include uncharged or dismissed conduct. *See United States v. Haj-Hamed*, 549 F.3d 1020, 1026 (6th Cir. 2008). "The government bears the burden of proving, by a preponderance of the evidence, that another offense constituted relevant conduct." *Amerson*, 886 F.3d at 573.

The Guidelines allow courts to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3. "The sentencing court's use of hearsay information has traditionally been almost unlimited." *United States v. Silverman*, 976 F.2d 1502, 1509 (6th Cir. 1992) (en banc). But "there must be some evidence of reliability." *United States v. Gibbs*, 182 F.3d 408, 441 (6th Cir. 1999). "The minimum-indicia-of-reliability standard is a 'relatively low hurdle' that asks only that '*some* evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing.'" *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013) (quoting *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir. 2007)).

Shalash argues that the government failed to establish by a preponderance of the evidence that the 1.5 kilograms fell under the relevant conduct provision. Shalash maintains that he obtained the heroin *after* the conspiracy ended, and therefore it cannot count as relevant conduct because it

did not occur during the commission of the convicted offense. As for the government's evidence, Shalash argues it lacks the minimum indicia of reliability needed for the district court's consideration. In particular, Shalash takes aim at the DEA agents' testimony about what Jacobs said in his October 15 interview. Of course, at trial, this could implicate hearsay issues. But at sentencing, the hearsay concern wanes; as long as there are minimum indicia of reliability, the district court can consider the evidence. *See Johnson*, 732 F.3d at 583.

True, as Shalash points out, Jacobs did not testify. Nor did he make a sworn statement. Other courts have found those factors relevant in the reliability analysis. *See United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995). But Shalash's reliance on *Fennell* is not sufficient. Information at sentencing need not always be sworn. And the declarant need not always testify at the sentencing hearing. *See Silverman*, 976 F.2d at 1509. In *Fennell*, the court found a lack of reliability because an unsworn, out-of-court statement delivered via telephone from the defendant's former girlfriend was the only evidence in the record; nothing corroborated her story. 65 F.3d at 813-14. Not so here. Jacobs told agents that he personally observed Shalash with a large amount of heroin that Shalash was "sitting on" before the conspiracy ended. As it turned out, Shalash did have a large quantity of heroin. This reinforces Jacobs's statement. In addition, DEA agents interviewed Jacobs in person—not over the phone as in *Fennell*, where officers "did not have an opportunity to observe her demeanor during the interview and therefore could not form any opinion as to her veracity." 65 F.3d at 813. Here, DEA agents could evaluate Jacobs's body language, demeanor, and reliability. And he provided specific and accurate details such as the type of car in which the drugs were stored and the location where he saw the drugs, further buttressing his credibility.

Then, there is testimony from the DEA agents. Muse and Special Agent Modesitt testified that they told Shalash that if he were to meet with his supplier he must contact the DEA. He never did. Instead, he just showed up a week later with a crock pot of heroin. And, after hearing Shalash's story, agents figured something was amiss. Consider what Shalash recounted: After his initial interview, he decided, on his own, to purchase 1.5 kilograms from two unknown Hispanic males at an Ohio IHOP. He could not remember when the transaction occurred or what type of car the suppliers drove. Nor did he have any documentary evidence backing up his claim. Then, after his rendezvous in Ohio, Shalash delivered the heroin to the DEA. Agents were skeptical.

Eventually, the DEA tracked down a man supposedly involved, and it became clear he had nothing to do with the drugs. As Muse put it, Shalash gave "no clue who the people were or where [the heroin] came from." R. 188, PageID #545. And upon inspection, the heroin appeared to be the same type of heroin distributed during the conspiracy. Jacobs's statement bolsters the position that Shalash possessed a large amount of heroin before the conspiracy ended. Shalash does not provide sufficient evidence to conclude that the testimony from Muse and Modesitt lacks reliability.

In sum, Shalash's story did not add up. The district court called it a "ruse." In doing so, the district court did not err. The evidence that the district court relied on—the DEA agents' testimony and information from Jacobs—cleared the "low hurdle" of reliability required for evidence to be considered at sentencing. *See Johnson*, 732 F.3d at 583. And, taken together, the evidence shows by a preponderance that Shalash acquired the heroin during the conspiracy. *See Amerson*, 886 F.3d at 573. That makes it relevant conduct under USSG § 1B1.3. We **affirm** the district court on this issue.

## C. Competency Evaluation

Finally, Shalash argues that the district court improperly considered the competency report, rendering his sentence substantively unreasonable.[1]  As an initial matter, the parties disagree whether the district court's consideration of the competency report raises procedural or substantive sentencing concerns.  This affects the standard of review because Shalash did not object at sentencing.  Although, in general, "a defendant must show the district court abused its discretion in imposing its sentence," *United States v. Tyes*, 729 F. App'x 440, 441 (6th Cir. 2018) (emphasis removed), we apply plain-error review in cases where the defendant fails to object to a procedural sentencing error.  *See United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc); *United States v. Lumbard*, 706 F.3d 716, 725 (6th Cir. 2013).  But abuse-of-discretion review remains intact when a defendant does not object to a substantive sentencing error.  *See United States v. Taylor*, 800 F.3d 701, 713-14 (6th Cir. 2015); *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008).  What's more, a presumption of reasonableness attaches to substantive sentencing challenges; the presumption falls away in procedural challenges.  *See United States v. Cabrera*, 811 F.3d 801, 808 (6th Cir. 2016).

"Whether consideration of an impermissible factor is categorized under the procedural or substantive reasonableness prong is not fully settled within our Circuit." *Cabrera*, 811 F.3d at 808 (quoting *United States v. Espericueta-Perez*, 528 F. App'x 572, 578 n.5 (6th Cir. 2013)).  In *Cabrera*, we highlighted the intra-circuit uncertainty surrounding impermissible factors before deciding it was "more properly considered a procedural, not substantive, error." *Id*. at 809.  But

---

[1] He does not argue, however, that the district court inadequately explained its reliance on the report.

we need not grapple with the procedural-substantive debate because under either standard, the district court committed no error.

In fashioning a sentence, district judges may not rely "on a factor that is neither enumerated in nor consistent with the Sentencing Guidelines or 18 U.S.C. § 3553(a)." *Cabrera*, 811 F.3d at 808. Typically, however, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Courts may "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476, 489 (2011) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). Information "need only relate to one of the § 3553(a) factors." *United States v. Cunningham*, 669 F.3d 723, 735 (6th Cir. 2012). "[E]videntiary inclusiveness is the order of the day at sentencing, a frame of reference as likely to facilitate leniency as to impede it." *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013).

A report generated from a defense-requested, voluntarily taken competency exam falls within the broad range of factors a court may consider at sentencing. *See id.* at 601-03. In *Graham-Wright*, the defendant challenged his sentence as procedurally and substantively unreasonable because at sentencing the district court considered information in the defendant's competency exam. *Id*. at 600. The report—in which a psychiatrist diagnosed the defendant as a pedophile—did not affect the defendant's Guidelines range. *Id.* at 601. But the district court used the report in denying the defendant's request for a downward variance. *Id.* On appeal, we ruled that because (1) the report was reliable, (2) the defendant requested the exam, and (3) the defendant voluntarily consented to the exam, the district court properly considered the report. *Id*. at 601-03. In

sentencing, after all, reliability is the central question, and the report was "real information from a real psychiatrist after a voluntary examination." *Id*. at 604. We held that the "district court permissibly considered the results from the examination in refusing to grant [the defendant's] request for a downward variance." *Id*. at 604.

As in *Graham-Wright*, it is so here. Shalash requested the examination and voluntarily consented to it. It did not affect his Guidelines range, and the results were to be shared with the court and prosecution. If anything, the defendant in *Graham-Wright* had a stronger case than the one here. After all, the defendant in *Graham-Wright* objected to the use of the report at sentencing; Shalash did not. 715 F.3d at 601. And Shalash never asked for a defense-only report done by a private doctor as the *Graham-Wright* defendant did. *See id.* at 602.

True, as Shalash argues, *Graham-Wright* also engaged in a harmless-error analysis. *See id*. at 604. We noted that "[e]ven if, for the sake of argument, the district court was incorrect, any error did not prejudice [the defendant]." *Id*. And it is also true, as Shalash contends, that here the district court acknowledged that the competency report affected the sentence. So unlike in *Graham-Wright*, Shalash's competency report decreased the amount of a downward variance that the district judge was willing to grant.

Ultimately, though, this is a distinction without a difference. *Graham-Wright's* discussion of the harmlessness of the error amounted to an alternative reason for upholding the district court. But this does not limit the holding: At sentencing, a district court may consider a report from a defense-requested, voluntarily taken examination done by a forensic psychologist. *See id.* 603-04.

## Conclusion

Accordingly, we **remand** for resentencing on the criminal history score issue but **affirm** in all other respects.

**KAREN NELSON MOORE, Circuit Judge, concurring in Parts A and B and dissenting from Part C.** Title 18 U.S.C. § 3553(c) requires that the district court, in sentencing defendants "shall state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). Defendants who are sentenced both within and outside the Guidelines range are entitled to adequate explanations of the chosen sentence. *See United States v. Cabrera*, 811 F.3d 801, 813 (6th Cir. 2016) (citing *United States v. Wallace*, 597 F.3d 794, 806–07 (6th Cir. 2010); *United States v. Blackie*, 548 F.3d 395, 401–02 (6th Cir. 2008)). When a defendant fails to object to the district court's explanation at the time of sentencing, we review the court's explanation for plain error. *Blackie*, 548 F.3d at 398. There is plain error where a district court fails to render an adequate explanation for its sentence. *Cabrera*, 811 F.3d at 812–13.

An adequate explanation of the sentence is necessary "to allow for meaningful appellate review." *Gall v. United States*, 552 U.S. 38, 50 (2007) (citing *Rita v. United States*, 551 U.S. 338, 357-58 (2007)). Therefore the district court "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356 (citing *United States v. Taylor*, 487 U.S. 326, 336–37 (1988)). Without adequate exposition on the part of the district court, the appellate court is disadvantaged in approaching its own task of reviewing for error. Therefore, a failure to comply with § 3553(c)'s expositional requirement generally implies a violation of a "substantial right." *Wallace*, 597 F.3d at 807.

Adequate explanations of sentencing decisions at the district court level are also required "to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50 (citing *Rita*, 551 U.S. at 357–58). "Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the

public with the assurance that creates that trust." *Rita*, 551 U.S. at 356. "Finally, the treatment of a § 3553(c) violation as plain error . . . help[s] maintain its requirements as mandatory, and not some formality that can be ignored without consequence." *Blackie*, 548 F.3d at 403 (citing *United States v. Lewis*, 424 F.3d 239, 249 (2d Cir. 2005)).

After explaining several factors it considered in deciding Shalash's sentence and declaring that sentence, the district court stated, almost as an afterthought: "I forgot to mention, the information in the competency evaluation, the Court evaluated that too. I may have varied a little bit more, but for the fact that there's some information in that evaluation which I think doesn't weigh favorably for you." (R. 188, Transcript of Sentencing at 61, Page ID #592). The competency evaluation in question is nine pages long and includes a diverse array of personal information about Shalash that a court could potentially find unfavorable: his failure to complete college because he found it "boring," his "contentious" divorce and failure to reside with his young child, his IQ in the "Low Average range," the results of a personality inventory test that suggested Shalash was "hyperactive, agitated, impulsive . . . self-confident and narcissistic," etc. (R. 149, Forensic Report at 3–5, Page ID #369–71). The district court failed to specify which "information" persuaded it to deny a more substantial downward variance.

In doing so the district court deprived Shalash of the ability to challenge the reasonableness of his sentence on appeal and undermined the perception of fairness in sentencing. *Blackie*, 548 F.3d at 402; *Gall*, 552 U.S. at 50. First, the current state of the record precludes Shalash from effectively attacking the reasonableness of his sentence on appeal—these grounds for the sentence are simply too indefinite. *See Cabrera,* 811 F.3d at 813 (quoting *Lewis,* 424 F.3d at 247 (explaining that "§ 3553(c) bestows on defendants the right to argue more effectively whether . . . a sentence is reasonable") (internal quotations and brackets removed)). In explaining its

determination that the district court did not err by considering the competency report, the majority assumes that the "information" the district court referred to was the results of the personality inventory. Another rational reviewer might believe that the "information" was Shalash's history of gambling addiction. Where the explanation is so sparse that it accommodates such different conclusions, it is inadequate. The majority is correct that established law indicates that the district court was permitted to refer to the competency report in determining the sentence. *See United States v. Graham-Wright*, 715 F.3d 598 (6th Cir. 2013). However, permission to rely on the competency report is not carte blanche to forego § 3553(c)'s requirement of an adequate explanation. Second, both the public and Shalash have an interest in knowing what the district court considered when it chose a specific term of incarceration. *See Wallace*, 597 F.3d at 807 ("[F]ailure to comply with § 3553(c) also affects the fairness, integrity, or public reputation of judicial proceedings.") (internal quotations omitted). That interest is impeded by the district court's inadequate explanation.

We have previously raised the inadequacy of the district court's sentencing explanation *sua sponte* and accordingly remanded. *See Cabrera,* 811 F.3d at 811. Here, such a course would be particularly appropriate because the government's concession of the miscalculation of Shalash's guidelines range already requires remand to the district court for resentencing. I would remand for the district court to clarify and explain its use of the competency report in sentencing.