NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0522n.06

No. 20-6153

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>AARON M. JAMISON,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Nov 16, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

Before: McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges.

PER CURIAM. Aaron M. Jamison appeals the district court's judgment sentencing him to 36 months of imprisonment and ordering him to pay $640,638.31 in restitution. As set forth below, we **AFFIRM**.

Jamison established and controlled Micah Group, LLC, a company that performed environmental remediation services for underground storage tank sites across Kentucky. The Kentucky Division of Waste Management Underground Storage Tank Branch (USTB) oversaw the remediation work and paid Micah Group for those services, which included drilling for groundwater monitoring wells and later removing the wells after the USTB determined that no further action was required at the underground storage tank site. Kentucky regulations provide for the proper abandonment of groundwater monitoring wells under the supervision of a certified well driller and the submission of a Uniform Kentucky Well Maintenance and Plugging Record. The record must document the abandonment work performed at the well and include an affirmation by

the certified well driller that the described work was done under the driller's supervision. *See* 401 Ky. Admin. Regs. 6:350.

In January 2020, Jamison pleaded guilty to an information charging him with theft from an employee benefit plan, in violation of 18 U.S.C. § 664; conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371; and unlawful storage of hazardous waste, in violation of 42 U.S.C. § 6928(d)(2)(A). With respect to the mail fraud conspiracy, Jamison admitted that he and others signed and submitted paperwork to the USTB, including abandonment reports, plugging records, and reimbursement claims that falsely stated that Micah Group had properly abandoned groundwater monitoring wells and that the work had been done under the supervision of a certified well driller.

The offense level calculation in Jamison's presentence report included a 14-level enhancement for a total loss amount in excess of $550,000 but less than $1,500,000. *See* U.S.S.G. § 2B1.1(b)(1)(H). After Jamison objected to the loss amount attributed to the mail fraud conspiracy, the district court conducted a hearing for the purpose of determining the loss and restitution amounts. The district court calculated a loss amount of $652,141.30 involving about 308 wells at 56 sites from 2013 through 2017. That amount included $792.30 per well paid by the USTB to Micah Group plus the costs paid by the State to inspect and remediate the work performed by Micah Group. The district court calculated Jamison's guidelines range as 46 to 57 months of imprisonment based on a total offense level of 23 and a criminal history category of I. The district court sentenced Jamison below that range to 36 months of imprisonment followed by three years of supervised release and ordered him to pay $640,638.31 in restitution. The total restitution amount included $637,879.90 to the Kentucky State Treasurer, representing the loss amount

related to the mail fraud conspiracy reduced by $14,261.40 that the State withheld from Micah Group after discovering misrepresentations about the well abandonments.[1]

On appeal, Jamison challenges the district court's determination of the loss and restitution amounts arising from the mail fraud conspiracy. We review the district court's determination of the loss amount attributed to a defendant under U.S.S.G. § 2B1.1 for clear error, while we review the district court's methodology for calculating the loss de novo. *United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010). We review the amount of restitution ordered by the district court for abuse of discretion. *United States v. Sizemore*, 850 F.3d 821, 824 (6th Cir. 2017).

Jamison argues that the district court's determination of the loss and restitution amounts went beyond the scope of the plea agreement, in which he admitted to actual knowledge of improper well abandonment at only one site in Jeffersonville, Kentucky. Although the plea agreement discussed the Jeffersonville site in particular, Jamison admitted facts demonstrating that the mail fraud conspiracy went beyond that site and lasted at least four years:

> Due to the inadequate cash reserves to operate Micah Group and the timeliness of the State's claims reimbursement upon receipt of a report and claim for payment, particularly between the years of 2013 and 2017, abandonments would be left for field crews to perform despite the fact that a certified driller could not be on site supervising or ensuring that the abandonments were performed correctly or as Micah Group field employees may have indicated in notes they took.

(R. 8, Plea Agreement, PageID 21.) Jamison also admitted facts regarding the signing of plugging records "for the Jeffersonville site in 2016, and the majority of others," clearly referencing the submission of fraudulent paperwork for other sites. (*Id.*)

Regardless of whether the facts admitted by Jamison included sites other than the Jefferson site, "a District Court may rely on extra-verdict facts or on those other than which the defendant

---

[1] The total restitution amount also included payments to individuals for health insurance premiums and denied healthcare claims relating to Jamison's theft from Micah Group's employee benefit plans. That restitution is not at issue in this appeal.

has specifically admitted when it calculates his sentence." *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006). Here, the plea agreement expressly contemplated that the district court would consider conduct beyond the Jeffersonville site in determining the loss amount. It stated that Jamison's "relevant conduct include[d] . . . claims submitted to the Kentucky Energy and Environment Cabinet between February 2004 and June 2017 fraudulently seeking payment for groundwater monitoring well abandonment work that was not performed correctly or at all." (R. 8, Plea Agreement, PageID 23.) And Jamison "specifically reserve[d] the right to contest the number of improperly abandoned wells, and any loss incurred by the Kentucky Energy and Environment Cabinet caused by the submission of claims for well abandonment work that was not performed correctly or at all." (*Id.*)

Jamison argues that the government did not satisfy its burden to prove the loss and restitution amounts by a preponderance of the evidence. For purposes of U.S.S.G. § 2B1.1, the government bears the burden to prove the amount of loss—actual or intended—by a preponderance of the evidence. *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021). With respect to an order of restitution, the government bears the burden of proving a victim's actual loss by a preponderance of the evidence. *United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015).

At the sentencing hearing, the government presented the testimony of Libby Zuege, a now-retired agent with the Environmental Protection Agency's Criminal Investigation Division who assisted in the investigation of Jamison's activities related to the improper abandonment of groundwater monitoring wells. Jamison claims that "much of what Ms. Zuege testified to is unsubstantiated." (Appellant's Br. at 16.)

Jamison first objects to Zuege's testimony about her interview with Craig Music, complaining that Music was not available for cross-examination. But Zuege's testimony about Music related to the storage of hazardous waste, not the improper abandonment of groundwater

monitoring wells. So it had no bearing on the district court's calculation of the loss and restitution amounts related to the mail fraud conspiracy.

To the extent that Jamison contends that Zuege's testimony constituted hearsay and violated his right to confrontation, neither the Federal Rules of Evidence nor the Confrontation Clause applies at sentencing. *See United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013). Jamison asserts that the district court applied an improper standard for accepting hearsay at sentencing: "The caveat is the evidence must have significant indicia—indicia of substantial significance. So we have to have something that would indicate that this would be acceptable evidence by the Court." (R. 53, Sentencing Tr., PageID 463.) But the district court later articulated the proper standard—"sufficient indicia of reliability." (*Id*. at PageID 476, 522.) *See United States v. Mukes*, 980 F.3d 526, 534 (6th Cir. 2020). The district court did not clearly err in finding that Zuege's testimony about her interviews with Micah Group's employees was sufficiently reliable based on her testimony that she warned the employees that providing false information could subject them to prosecution for making a false statement. *See United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) ("[W]e will reverse the district court's finding of reliability only if it leaves us 'with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003))).

Jamison next objects to the government's use of a summary chart to establish the State's losses from Micah Group's improper abandonment of groundwater monitoring wells. But "a summary chart, when supported by additional evidence, can be used by the government to establish losses for the purposes of restitution." *United States v. Carmichael*, 676 F. App'x 402, 412 (6th Cir. 2017) (citing *United States v. Sawyer*, 825 F.3d 287, 296 (6th Cir. 2016)). Exhibit 14, a spreadsheet titled "86 MG 'Top Tier,'" was created by the State and provided information about 86 sites where Micah Group improperly abandoned groundwater monitoring wells. This

spreadsheet included the date when Micah Group submitted the abandonment report, the number of wells at the site purportedly abandoned by Micah Group after receiving a "no further action" letter from the USTB, the name of the certified well driller who affirmed that the work at the site had been done under the driller's supervision, the amount paid by the State to Micah Group, and the amount paid by the State to contractors to investigate and remediate Micah Group's work. The spreadsheet also included commentary about the contractors' findings at each site and photographs of the wells. This exhibit, combined with Zuege's testimony, Jamison's admissions in the plea agreement, and the other evidence presented by the government, provided sufficient evidence for the district court to determine by a preponderance of the evidence the amounts of loss and restitution.

Jamison also contends that the district court denied him the opportunity to present exculpatory evidence through the testimony of Ryan Brown, a certified well driller who worked for Micah Group at some point. But the district court never prohibited Jamison from calling Brown or any other witnesses. At the beginning of the sentencing hearing, defense counsel asserted that the government had just produced an unsworn statement from Brown indicating that he had worked on approximately 50 sites and that "in the site[s] that he was on that the work was done properly." (R. 52, Sentencing Tr., PageID 296.) Defense counsel asked "to include Mr. Brown's relevant testimony as part of the record here because I think it's instructional to the Court as to exculpation of Mr. Jamison and the Micah Group." (*Id.* at PageID 297.) The district court did not prohibit defense counsel's proffer. Regardless, Brown's statement had little bearing on the district court's calculation of the loss and restitution amounts because he was not listed as the certified well driller for any of the sites included in the district court's calculation.

Jamison asserts that he was wrongly held accountable for the actions of Mark Stafford, a certified well driller for Micah Group who signed forms affirming that he had supervised work

when he had not. According to Jamison, Stafford was the person to be held liable for any well abandonment issues pursuant to 401 Kentucky Administrative Regulations 6:350. But Jamison pleaded guilty to conspiring to commit mail fraud, admitting that he, Stafford, and others submitted or caused to be submitted Micah Group's paperwork, including abandonment reports, plugging records, and reimbursement claims to the USTB, that falsely stated that Micah Group had properly abandoned the groundwater monitoring wells and that the work had been done under Stafford's supervision. The Mandatory Victims Restitution Act "specifically empowers district courts to make individual defendants liable for all of the losses caused by multi-defendant crimes, and we have consistently affirmed such decisions in the conspiracy context." *Sawyer*, 825 F.3d at 295.

Jamison has failed to demonstrate that the district court abused its discretion or otherwise erred in calculating the loss and restitution amounts. Accordingly, we **AFFIRM** the district court's judgment.