NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0261n.06

No. 18-1865

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>May 21, 2019<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LARRY JAMES HARRIS, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    NORRIS, DAUGHTREY, and LARSEN, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.    Sentenced to 70 months in prison following his guilty plea to one count of distributing heroin and fentanyl, defendant Larry James Harris now argues that his sentence of incarceration is procedurally and substantively unreasonable and violates principles of due process. For the reasons set forth below, we disagree and affirm the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

A federal grand jury charged Harris with making three sales of illegal narcotics to an undercover agent. One sale involved 27.97 grams of heroin, and the other two sales were for a total of 32.97 grams of substances containing heroin, fentanyl, and tramadol. Ultimately, Harris pleaded guilty to one count of distributing heroin and fentanyl and received a sentence of 70 months in prison.

In arriving at that sentence, the district court relied upon the Drug Equivalency Tables[1] and Drug Quantity Table referenced in section 2D1.1 of the 2016 version of the United States Sentencing Guidelines. As directed by the language in Application Note 8(B) of that section, because multiple substances were involved in the offenses with which Harris was charged, the district court "convert[ed] each of the drugs to its converted drug weight, add[ed] the quantities, and look[ed] up the total in the Drug Quantity Table to obtain the combined offense level." USSG § 2D1.1, cmt. n.8(B).[2] The Drug Equivalency Tables provide that each gram of heroin is equivalent to one kilogram of marihuana, and each gram of fentanyl is equivalent to two-and-a-half kilograms of marihuana. USSG § 2D1.1, cmt. n.8(D). Thus, the sale of 27.97 grams of heroin was equivalent to 27.97 kilograms of marihuana. Because the other two sales—amounting to 32.97 grams of controlled substances—involved mixtures of heroin, fentanyl, and tramadol, the district court referred to Note A to § 2D1.1's Drug Quantity Table, which provides that "[i]f a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level." The fentanyl-to-marihuana equivalency being greater than that of the heroin-to-marihuana equivalency, the district court multiplied the 32.97 grams by 2.5 kilograms, resulting in an additional 82.42 kilograms of marihuana-equivalent drug. Adding the two kilogram amounts together, the district court determined that Harris was responsible for 110.40 kilograms of marihuana,[3] which resulted in a base offense level of 24. *See* USSG § 2D1.1(c)(8). The district

---

[1] Pursuant to Amendment 808 to the Guidelines, effective November 1, 2018, the term "Drug Equivalency Tables" has been replaced by the term "Drug Conversion Tables."

[2] Amendment 808 also struck from the 2018 version of the Guidelines the term "marihuana equivalency" and inserted instead the term "converted drug weight."

[3] Although the district court found Harris responsible for 110.40 kilograms off marihuana, the two equivalency figures actually add up to 110.39 kilograms. The discrepancy has no effect on the calculation of Harris's sentence.

court reduced that offense level to 21 due to Harris's acceptance of responsibility. As a criminal history category V offender, Harris thus was subject to a Guidelines sentencing range of 70–87 months.

After a sentencing hearing at which Harris detailed the steps he had taken to turn from a life of crime, the district court sentenced him to 70 months in prison and three years of supervised release. Harris now appeals to this court, arguing that the sentence of incarceration imposed upon him is procedurally and substantively unreasonable and a violation of his constitutional right to due process of law.

## DISCUSSION

**Standard and Parameters of Review**

"We review a district court's sentencing determination under a deferential abuse-of-discretion standard, for reasonableness." *United States v. Pearce*, 531 F.3d 374, 384 (6th Cir. 2008) (citation and internal quotation marks omitted). That reasonableness review "has both a procedural and a substantive component." *United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. Additionally, "consideration of an impermissible factor is . . . considered a procedural . . . error." *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016). Appellate review for substantive reasonableness of a sentence "will, of course, take into account the totality of the circumstances . . . ." *Gall*, 552 U.S. at 51. A claim of substantive unreasonableness is, at

its heart, "a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir.), *cert. denied*, 139 S. Ct. 264 (2018). We "may apply a rebuttable presumption of reasonableness to sentences within the Guidelines," *Pearce*, 531 F.3d at 384 (citing *Gall*, 552 U.S. at 51), but may not reverse a district court's sentencing determination simply because we "might reasonably have concluded that a different sentence was appropriate." *Gall*, 552 U.S. at 51.

**Procedural-Reasonableness Challenge**

In arguing that his 70-month prison sentence is procedurally unreasonable, Harris contends that the district court erred by not basing its heroin/fentanyl conversion on scientific or law-enforcement data. Harris relies entirely upon this court's decision in *United States v. Martin*, 438 F.3d 621 (6th Cir. 2006). In *Martin*, the defendant challenged the validity of Guidelines ratios used to estimate the amount of methamphetamine that can be manufactured from a precursor chemical (pseudoephedrine), arguing that the Sentencing Commission had failed to follow a statutory command that such ratios be "based on scientific, law enforcement, and other data the Sentencing Commission considers appropriate." *Id.* at 625 (quoting the Methamphetamine and Club Drug Anti-Proliferation Act of 2000, Pub. L. No. 106-310, § 3651(b), 114 Stat. 1238-39 (2000)). We construed the text of the statute to require that the Commission base the ratios on both scientific and law-enforcement data, but we concluded that the defendant had not met his burden of showing that the Sentencing Commission had failed to base the ratios on such data. *Id.* at 632–35. The district court had not erred, therefore, by using the ratios to calculate the defendant's sentence. *Id.*

Harris seeks to extrapolate from *Martin*'s construction of the statute at issue there a requirement to invalidate the district court's determination that the drugs that Harris sold that

contained trace amounts of fentanyl should be treated—for sentencing purposes—as containing only fentanyl. Because of that treatment, 32.97 grams of heroin that contained unspecified amounts of fentanyl were considered to be equivalent to 32.97 grams of fentanyl and were subject to the 1-gram-to-2.5-kilograms ratio to calculate marihuana equivalency and increase substantially the offense level of the crime. *See* USSG § 2D1.1 (Notes to Drug Quantity Table (A)). According to Harris, *Martin* requires that some "scientific, law enforcement, [or] other data" should have been admitted at sentencing to establish the percentage of fentanyl contained in the heroin sample rather than simply presuming that the mixture contained pure fentanyl.

*Martin* is inapposite. As we noted above, the defendant in *Martin* argued that the Sentencing Commission had exceeded the scope of its statutory authority by failing to base the quantity ratios at issue there "on scientific, law enforcement, and other data the Sentencing Commission considers appropriate," as required by statute. *Martin*, 438 F.3d at 625. But Harris does not argue that the same, or even similar, statutory language governed the promulgation of the Guidelines used to calculate his sentence. In fact, Harris does not challenge the fentanyl-to-marihuana ratio promulgated by the Commission. Instead, he argues that the district court erred by not requiring independent evidence of the amount of fentanyl in the mixture before treating the entire mixture as fentanyl. But the district court was merely following USSG's § 2D1.1's Note A to Drug Quantity Table, which required the court to treat the entire weight of the mixture as fentanyl. Because *Martin* is inapplicable to this case, Harris has offered no reason for us to conclude that the district court failed to calculate his Guidelines range properly. In short, the district court appropriately calculated the Guidelines sentencing range while recognizing that the Guidelines themselves are advisory only. The district court also adequately explained the sentence it was imposing, discussing Harris's childhood, his extensive criminal record, and his genuine

efforts to turn from a life of crime. Consequently, Harris has failed to establish that his 70-month prison sentence is procedurally unreasonable.

**Substantive-Reasonableness Challenge**

Nor can Harris show that his sentence is substantively unreasonable. The district court did not select the sentence arbitrarily or place undue weight on any particular sentencing factor. Moreover, the sentence that the district court imposed was at the low end of the applicable Guidelines range and must, therefore, be presumed reasonable in the absence of evidence to the contrary. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (*en banc*).

**Due-Process Challenge**

For the first time on appeal, Harris also claims that treating the heroin-fentanyl mixtures as pure fentanyl violated his due-process rights and resulted in a sentence that was based upon arbitrary considerations. Because Harris did not raise this challenge in the district court, we review only for plain error. *See, e.g.*, *United States v. Vonn*, 535 U.S. 55, 59 (2002). To satisfy the plain-error standard, Harris must establish "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (citation and internal quotation marks omitted). Harris cannot satisfy this burden.

The United States Supreme Court has held consistently that if laws passed by Congress "are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied." *Nebbia v. New York*, 291 U.S. 502, 516 (1934). Congress itself specifically determined that punishments for possession or distribution

of fentanyl should be based not on the weight of fentanyl alone, but rather upon the weight of any "mixture or substance containing *a detectable amount* of [fentanyl]." *See, e.g.*, 21 U.S.C. § 841(b)(1)(A)(vi) and (b)(1)(B)(vi) (emphasis added). Congress and the Sentencing Commission were within their authority to consider controlled substances enhanced with fentanyl more dangerous than pure narcotics when enacting 21 U.S.C. § 842 and USSG § 2D1.1. Indeed, in explaining the rationale for a recent amendment that increased base offense levels for misrepresenting as pure a substance containing fentanyl, the Sentencing Commission stated:

> The Commission learned that while fentanyl has long been a drug of abuse, there are several indications that its abuse has become both more prevalent and more dangerous in recent years. For example, the Drug Enforcement Administration observed a dramatic increase in fentanyl reports between 2013 and 2015, and the Centers for Disease Control and Prevention reported that there were 9,580 deaths involving synthetic opioids (a category including fentanyl) in 2015, a 72.2 percent increase from 2014. The Commission received testimony and other information indicating that fentanyl and its analogues are often trafficked mixed with other controlled substances, including heroin and cocaine. In other instances, fentanyl is placed in pill or tablet form by drug traffickers. Although some purchasers of these substances may be aware that they contain fentanyl (or even seek them out for that reason), others may believe that they are purchasing heroin or pharmaceutically manufactured opioid pain relievers.
>
> Because of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using.

USSG App. C, amendment 807 (Reason for Amendment) (2018).

Such an enhanced penalty for distributing heroin laced with fentanyl would not have applied to Harris because, in this case, the government adduced no evidence that Harris was aware of the presence of fentanyl in the heroin he sold. *See* USSG § 2D1.1(b)(13) (2018) ("If the defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide) or fentanyl analogue, increase by **4** levels."). Nevertheless, given the dangers inherent in mixing

fentanyl with heroin, Congress and the Sentencing Commission created a rational sentencing scheme for punishing a mixture of fentanyl and heroin as fentanyl alone. *See Chapman v. United States*, 500 U.S. 453, 465 (1991). Harris's due-process challenge to his sentence thus is without merit.

## CONCLUSION

For the reasons stated, we find that the 70-month, within-Guidelines sentence imposed upon Harris in this case is both procedurally and substantively reasonable and does not violate Harris's due-process rights. We thus AFFIRM the judgment of the district court in its entirety.